The STATE of Ohio, Appellee,

v.

WILSON, Appellant.

[Cite as *State v. Wilson*, 192 Ohio App.3d 189, 2011-Ohio-155.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2010–P–0005.

Decided Jan. 14, 2011.

Victor V. Vigluicci, Portage County Prosecuting Attorney, and Pamela J. Holder, Assistant Prosecuting Attorney, for appellee.

Maistros & Loepp, Ltd., and Thomas C. Loepp, for appellant.

DIANE V. GRENDELL, Judge.

{¶ 1} Defendant-appellant, Bradford Wilson, appeals his convictions for attempted voyeurism and voyeurism following trial in Portage County Municipal Court, Ravenna Division. The court sentenced Wilson to an aggregate jail term of 120 days. For the following reasons, we affirm the decision of the court below.

{¶ 2} On March 18, 2008, Wilson was indicted by the Portage County Grand Jury on one count of attempted voyeurism, a misdemeanor of the first degree in

violation of R.C. 2923.02, for conduct that, if successful, would have constituted a violation of R.C. 2907.08(D)(1) and (E)(4), and one count of voyeurism, a misdemeanor of the third degree in violation of R.C. 2907.08(A) and (E)(2).

{¶ 3} The matter proceeded to a bench trial.

{¶ 4} V.B. (a minor at the time of the offenses) testified that in January 2008, she was living at 4805 Wayne Road, in Mantua Township, Ohio, with Wilson (her stepfather), Ellen Mary Wilson (her mother), and three younger siblings. At this time, V.B. was a senior at Crestwood High School.

{¶ 5} In August 2007, Ellen Mary Wilson began employment in Pennsylvania, which required her to be away from home during the work week. V.B. testified that her relationship with Wilson had always been awkward. After her mother began staying in Pennsylvania during the week days, Wilson's demeanor toward her became friendlier, while his discipline became stricter.

{¶ 6} In September or October 2007, V.B. testified that Wilson hung her underwear on a wall tapestry in their living room and later asked her if she had received his present. She thought this conduct was "weird" but put her underwear away without doing anything more.

{¶ 7} After this, V.B. testified that she found a pornographic VHS tape on her bed. Since she had seen Wilson watch pornography, she returned the tape to him. V.B. testified that the tape reappeared on her bed, and again, she returned it to Wilson. According to V.B., this scenario happened regularly for about three weeks, until she put the tape away in her desk drawer.

{¶ 8} About a week after Christmas 2007, V.B. found a vibrator in blue wrapping paper on her desk. A day or two later, Wilson asked her whether she had received the present. She responded, "yes," and the matter was not discussed further. V.B. showed the vibrator to her friend, Kristi Levanduski, and told the students at her school lunch table about it.

{¶ 9} V.B. also testified that throughout this period, she would regularly hear Wilson going down into the basement while she showered, as the wooden steps leading to the basement were next to the shower. V.B. testified she knew the footsteps were Wilson's because they were heavy and he wore work boots, while her next-youngest sibling would have been only ten years old at the time.

{¶ 10} Wilson's conduct made V.B. suspicious that he might be watching her.

{¶ 11} On January 28, 2008, V.B. returned home with her friend, Levanduski, and they searched her bedroom. In an air vent, about a foot from the ceiling, they found a camera. V.B. testified that the flutes of this vent faced downward, whereas the flutes of other vents were turned upward. They next investigated the shower. Levanduski went in the shower with a flashlight and V.B. went to

the basement, only five steps below the main floor of the house. Wilson has a work bench in the basement, which stands next to a wall shared with the shower upstairs. A piece of material was hanging on the wall, but V.B. could see a light behind it. When she removed the material she found a hole, just below eye level, that allowed her to see Levanduski in the shower.

{¶ 12} V.B. called her paternal grandmother, and Levanduski took pictures of the camera and the hole in the shower with her cell phone. The women packed a bag of clothes for V.B., and they went to Levanduski's house. Sheriff's deputies arrived at the Levanduski residence, and V.B. and Levanduski made written statements.

{¶ 13} V.B. testified that she had been grounded recently for excessive cell-phone usage and for receiving poor grades on her interim report. V.B. admitted that by Christmas 2007, she knew the family would be moving to Pennsylvania. V.B. was vocal in expressing her unwillingness to move and said she would do whatever it takes not to move.

{¶ 14} Levanduski testified and corroborated V.B.'s testimony regarding the discovery of the camera in the bedroom vent and the hole in the shower. Levanduski's testimony differed in certain particulars. According to Levanduski, she was in the basement looking at V.B. through the hole. Levanduski confirmed that V.B. had told her about Wilson's behavior and showed her the vibrator prior to the discovery of the camera and hole on January 28, 2008.

{¶ 15} Matthew L. Skilton, a deputy sheriff with the Portage County Sheriff's Department, testified that on January 28, 2008, he responded to a call of "suspicious activity" by visiting V.B. at the Levanduski residence. Skilton took written statements from V.B. and Levanduski and met with Detective DJ Walker, also of the Portage County Sheriff's Department. Skilton and Walker obtained a search warrant before proceeding to the Wilson residence.

{¶ 16} Deputy Skilton testified that Wilson did not appear surprised when he and Detective Walker arrived to execute the warrant. Wilson had already dismantled the camera and had it lying on the table with various power cords. At the officers' request, Wilson went into the attic and dismantled a converter box, which was part of the system that allowed Wilson to view what the camera was transmitting from the television set. Wilson explained that he installed the camera because V.B.'s grades were dropping and he thought something was going on with her. Wilson also claimed V.B. would arrive home late from work. According to Skilton, Wilson said he did not suspect drug or alcohol abuse, but could not say exactly what he suspected V.B. of doing.

{¶ 17} Initially, Deputy Skilton was unable to locate the hole in the shower. After speaking with V.B. by cell phone, he went to the basement and found the

piece of cloth on the wall, covering the hole. Skilton testified that the hole had recently been covered by caulk, which was still wet and tacky. Skilton wiped the caulk away and was able to see into the shower. In particular, he could view Detective Walker in the shower from his knees to his head. Skilton described the hole as being at least one-eighth of an inch thick, about the size of a pencil, and perfectly round as if it had been drilled.

{¶ 18} Deputy Skilton testified that Wilson explained the caulk by claiming that there had been problems with the shower leaking water. Wilson denied using the hole to watch V.B. while showering. Wilson denied ever seeing V.B. in a state of undress in her bedroom, claiming that he would turn the camera off if he thought she might be naked. Wilson also claimed that giving V.B. the vibrator was a mistake, and that it had been intended for his wife.

{¶ 19} Detective Walker corroborated Deputy Skilton's testimony regarding the hole in the shower and Wilson's explanation of the camera and vibrator. Walker testified that Wilson denied making any recordings using the camera because he did not know how to record and/or because the recording device was not hooked up to the television. Walker also testified that he and Skilton took photographs of V.B.'s bedroom, the shower, and the basement.

{¶ 20} Ellen Mary Wilson, V.B.'s mother, testified for the defense. She testified that Wilson had helped raise V.B. since infancy and treated her as his own daughter. In the months prior to the January 28, 2008 incident, there were problems with V.B. regarding her grades, cell-phone and computer usage, behavior, and curfew violations. V.B. would not willingly move to Pennsylvania. A few days before January 28, 2008, Ellen and V.B. argued about moving to Pennsylvania, and Ellen decided to move V.B. there before the end of the school year because she did not trust her at home with the other children.

{¶ 21} Ellen Wilson testified that there had been a problem with the shower's leaking water for many months and that she and Wilson had both tried, unsuccessfully, to stop the leaks by caulking.

{¶ 22} Ellen admitted that Wilson did not tell her that he had installed the camera in V.B.'s bedroom until after its presence was discovered.

{¶ 23} Claire and Charlie Wilson, two of V.B.'s younger siblings, testified that V.B. was supposed to walk them to the bus stop at the end of the driveway before and after school, but she did not do so. They also testified that she spent most of her time locked in her room.

{¶ 24} Tom Veon, a friend of Wilson's, testified that Wilson would have to watch the younger children when V.B. was supposed to be watching them.

{¶ 25} Mary Jo Wilson, Wilson's mother, testified that she was worried by V.B.'s refusal to move to Pennsylvania.

{¶ 26} Wilson testified that the police arrived at his house to execute the search warrant after 1:00 a.m. on January 29, 2008. He said he removed the camera before their arrival because he wanted to be "perfectly honest" with them and allow them to inspect the camera. Wilson confirmed that he and Ellen Wilson had serious concerns about V.B.'s grades and behavior during the fall and winter of 2007. Wilson did not have an explanation as to why he did not inform Ellen that he was installing the camera, but claimed that they had discussed doing so. He placed the camera in V.B.'s room because she was isolating herself there. Wilson testified that the camera, although directly connected to its power source, could transmit images wirelessly to the television. He testified that the camera was installed about three days before its discovery. Wilson denied that he had ever viewed V.B. undressed or undressing.

{¶ 27} Wilson denied viewing V.B. in the shower. He testified that the shower leaked chronically, and he was caulking it every two or three days to correct the problem. He had placed a rag over the hole to "hold the caulk in place so it didn't get washed out by the water." Wilson denied applying fresh caulk to the shower on the evening of January 28, 2008.

{¶ 28} Wilson denied hanging V.B.'s underwear in the living room, giving her a pornographic video, and giving her a vibrator.

{¶ 29} At the close of all the evidence, counsel for Wilson moved for a dismissal of both charges pursuant to Criminal Rule 29.

{¶ 30} On December 14, 2009, at the conclusion of the trial, the municipal court found Wilson guilty of voyeurism and attempted voyeurism.

{¶ 31} On January 15, 2010, a sentencing hearing was held. The municipal court sentenced Wilson to 180 days in jail for attempted voyeurism (a first-degree misdemeanor), with 90 days suspended, and 60 days in jail for voyeurism (a third-degree misdemeanor), with 30 days suspended. The court ordered the sentences to be served consecutively for an aggregate jail sentence of 120 days. Additionally, the court imposed a fine of $1,000, with $750 suspended, and designated Wilson a Tier I sex offender.

{¶ 32} On January 20, 2010, Wilson filed a notice of appeal. On appeal, Wilson raises the following assignments of error:

{¶ 33} "[1.] The trial court's judgment is against the manifest weight of the evidence and is not supported by the evidence.

{¶ 34} "[2.] The defendant was denied a fair trial due to prosecutorial misconduct.

{¶ 35} "[3.] The trial court erred in denying the Criminal Rule 29 motion for acquittal."

{¶ 36} We shall treat Wilson's first and third assignments of error regarding the manifest weight and sufficiency of the evidence respectively.

{¶ 37} " '[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury," i.e., "whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed.1990) 1433. Essentially, "sufficiency is a test of adequacy" that challenges whether the state's evidence has created an issue for the jury to decide regarding each element of the offense. Id.

{¶ 38} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. In reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus.

{¶ 39} Weight of the evidence, in contrast to its sufficiency, involves "the inclination of the *greater amount of credible evidence.*" (Citation omitted and emphasis sic.) *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Whereas the "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." (Citation omitted.) *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" Id.

{¶ 40} Generally, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. Thomas* (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356, at the syllabus. When reviewing a manifest-weight challenge, however, the appellate court sits as the "thirteenth juror." (Citation omitted.) *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine whether "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial

should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 41} In order to convict Wilson of third-degree voyeurism, the state was required to prove, beyond a reasonable doubt, that between January 21 and January 28, 2008, "for the purpose of sexually arousing or gratifying the person's self," he "surreptitiously invade[d] the privacy of [V.B.], to spy or eavesdrop upon [her]." R.C. 2907.08(A).

{¶ 42} In order to convict Wilson of first-degree attempted voyeurism, the state was required to prove, beyond a reasonable doubt, that between January 21 and January 28, 2008, he attempted to "secretly or surreptitiously videotape, film, photograph, or otherwise record [V.B.] under or through the clothing being worn by [her] for the purpose of viewing the body of, or the undergarments worn by, [V.B.]." R.C. 2907.08(D).

{¶ 43} Wilson maintains that the state failed to prove the reason he had placed the camera in V.B.'s room, i.e., that he had done so for the purpose of sexually arousing or gratifying himself. The purpose element of voyeurism "is typically proved by evidence that the accused was in a state of undress and/or had engaged in masturbation while peering into a home or other building at people inside." *State v. Haldeman* (Nov. 22, 2000), 2nd Dist. No. 18199, 2000 WL 1726858, at *3. Neither circumstance was demonstrated with respect to Wilson.

{¶ 44} Initially, we note that the purpose of sexually arousing or gratifying oneself is only an element of third-degree voyeurism, i.e., the charge that Wilson observed V.B. while showering. With respect to first-degree voyeurism, i.e., the attempted recording of V.B., the state need only prove a purpose of viewing her body and/or undergarments.

{¶ 45} Although there was no evidence that Wilson was in a state of undress and/or masturbating at the time he viewed V.B. showering, a purpose of sexual arousal or gratification may be inferred from other circumstances. If pornography is part of the circumstances surrounding the invasion of the victim's privacy, then a purpose of sexual arousal or gratification may be inferred. See, e.g., *State v. Nunez*, 6th Dist. No. H–09–019, 2010-Ohio-3435, 2010 WL 2891495, at ¶ 66 (video of the offender's daughter in the bathroom also contained commercial pornography); *Haldeman*, 2000 WL 1726858 (an offender, caught looking in the window of another's home, had a vibrator and pornographic materials in his vehicle).

{¶ 46} In the present case, V.B. testified that Wilson had given her a pornographic video and a vibrator several weeks prior to the time he was charged with viewing her in the shower. This evidence suggests that Wilson had a sexual

interest in V.B., and in that context, his viewing her in the shower was for the purpose of sexual arousal and gratification.

{¶ 47} The courts have also held that the sexual-arousal and/or gratification element may be inferred where there is no innocent, i.e., nonsexual, explanation for the offender's conduct. See, e.g., *Huron v. Holsapple* (Aug. 8, 1997), 6th Dist. No. E–96–063, 1997 WL 457971, at *3 (offender was caught "looking at the victim through her window during a time in the morning when the victim, a fourteen-year-old girl, was dressing for school"); *State v. Million* (1989), 63 Ohio App.3d 349, 351, 578 N.E.2d 869 (evidence that the offender used a hand-held mirror to look into an adjacent bathroom stall would support an inference of a purpose of sexual arousal or gratification "since innocent explanations for his behavior do not readily come to mind").

{¶ 48} In the present case, Wilson provided no innocent explanation for viewing V.B. in the shower, inasmuch as he denied doing so. No innocent explanation for such behavior is readily apparent. Moreover, Wilson's explanation for the hole itself is less than credible. The officers of the Portage County Sheriff's Department described a hole, perfectly round as if it had been drilled, that allowed one to view another in the shower. At the time officers viewed the hole, caulking had recently been applied to cover the hole. The hole was also covered by a rag, which Wilson claimed was to keep moisture off the caulk, although any moisture would have come from inside the shower rather than from the basement. The rag and caulking suggest that Wilson was trying to conceal the hole.

{¶ 49} Wilson further argues there was no evidence that he actually saw V.B. nude. We note that it was not necessary that Wilson actually saw V.B. naked in order to be convicted of either third-degree voyeurism or first-degree attempted voyeurism.

{¶ 50} Finally, Wilson argues that V.B.'s and Levanduski's testimony is self-contradictory and incredible. V.B. testified that she was in the basement and viewed Levanduski in the shower, while Levanduski testified that she was in the basement and viewed V.B. in the shower. This inconsistency in their testimony raises some concern as to their credibility, but it is the prerogative of the trier of fact to resolve such discrepancies. *State v. Antill* (1964), 176 Ohio St. 61, 67, 26 O.O.2d 366, 197 N.E.2d 548. What is material to the charges against Wilson is that the physical evidence establishes that a person's whole body could be viewed from the basement through a hole in the shower. This fact was corroborated by the testimony of Deputy Skilton and Detective Walker.

{¶ 51} Wilson claims that it is incredible that V.B. would tell Levanduski and her friends at school about the pornography and the vibrator but not a responsible adult. V.B. testified that she did not tell an adult because she was

embarrassed and/or mistrustful of the adults, while she was more comfortable confiding in her friends. Wilson does not explain why V.B.'s decision to confide in her friends rather than an adult renders her testimony less credible, particularly when her suspicions about him were confirmed by the physical evidence.

{¶ 52} The first and third assignments of error are without merit.

{¶ 53} In his second assignment of error, Wilson asserts that he was denied a fair trial by prosecutorial misconduct, inasmuch as the prosecutor "violated the Court's discovery Order" and "consistently utilized improper objections."

{¶ 54} The test for prosecutorial misconduct typically focuses on the propriety of the prosecutor's conduct and whether the substantial rights of the defendant were prejudiced. See, e.g., *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293; *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 470 N.E.2d 883. Where it is claimed that the prosecutor has violated Crim.R. 16 and/or a discovery order of the trial court, however, the court's response to the alleged violation is reviewed under an abuse-of-discretion standard. Crim.R. 16(L)(1) ("[i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances"); *State v. Wiles* (1991), 59 Ohio St.3d 71, 78, 571 N.E.2d 97; *State v. Parson* (1983), 6 Ohio St.3d 442, 445, 6 OBR 485, 453 N.E.2d 689; *State v. Edwards* (1976), 49 Ohio St.2d 31, 42, 3 O.O.3d 18, 358 N.E.2d 1051.

{¶ 55} Wilson's first argument is that the prosecutor had "hidden" certain photographs from defense counsel taken by Detective Walker and Deputy Skilton at his home while executing the search warrant. In the course of Detective Walker's testimony on October 27, 2009, it was learned that these photographs were not provided to defense counsel, nor were they in the prosecutor's possession. The trial court continued the trial until December 14, 2009, to allow defense counsel an opportunity to examine the photographs. At the beginning of trial on December 14, 2009, defense counsel advised that he had received the photographs.

{¶ 56} The trial court's six-week continuance of trial to allow the state to provide the photographs to defense counsel mitigated any potential prejudice that resulted from the failure to provide these photographs in discovery.

{¶ 57} Wilson also claims that defense counsel was not provided with the report of supplementary interview between Detective Walker and V.B. conducted on September 23, 2009. This report, which was not admitted at trial, was

provided to defense counsel on December 14, 2009. Wilson neither claims nor demonstrates that he was prejudiced by not receiving the supplementary report prior to December 14, 2009.

{¶ 58} Wilson claims that the prosecutor withheld information "concerning alleged witnesses," specifically the fact that V.B. told her friends at school about the pornography and vibrator he had given her. It was evident at trial, however, that V.B. did not tell Deputy Skilton or Detective Walker that she had discussed this matter with anyone except Levanduski, whose name was provided to defense counsel. Moreover, Wilson cites no rule or trial court order obliging the prosecutor to provide the defense with the names of potential witnesses, apart from exculpatory witnesses and witnesses that the prosecution intends to call at trial.

{¶ 59} Finally, Wilson claims that the prosecutor "peppered harassing and misleading objections" to defense counsel's efforts "to elicit testimony as to the reasons * * * why the Defendant would have installed the camera." Our review of the record does not substantiate Wilson's claim. The municipal court carefully limited questions about V.B.'s general behavior and conduct to the period after August 2007, when Ellen Wilson began working in Pennsylvania and prior to the discovery of the camera. Within this boundary, the court allowed, irrespective of the prosecutor's objections, considerable testimony regarding Wilson's concerns with V.B.'s general behavior, computer and cell-phone usage, violation of curfew, grades, and household responsibilities. We find neither misconduct nor prejudice.

{¶ 60} The second assignment of error is without merit.

{¶ 61} For the forgoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, finding Wilson guilty of attempted voyeurism and voyeurism, is affirmed. Costs are to be taxed against appellant.

Judgment affirmed.

RICE and TRAPP, JJ., concur.