[Cite as *State v. Goldblum*, 2014-Ohio-5068.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25851 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-CR-4046 |
| v. | : | |
| | : | |
| KEITH D. GOLDBLUM | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 14th day of November, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, and KIRSTEN A. BRANDT, Atty. Reg. #0070162, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellee

LORIN J. ZANER, Atty. Reg. #0008195, 241 North Superior Street, Suite 200, Toledo, Ohio 43604
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}    Defendant-appellant Keith D. Goldblum appeals from his conviction and sentence for one count of Attempt to Commit Voyeurism, two counts of Voyeurism, eight counts of Rape (under 13), and two counts of Unlawful Sexual Conduct with a Minor. Goldblum contends that there was insufficient evidence to convict him on the Voyeurism charges and that all of his convictions are against the manifest weight of the evidence.  He further contends that the trial court erred in overruling his motion to sever.  Goldblum also contends that he was denied due process and a fair trial when the trial court used an improper definition of "leading question" and when the prosecutor engaged in misconduct during her closing statement at trial.  Finally, Goldblum contends that the trial court failed to make the necessary findings under R.C. 2929.14(C) for the imposition of consecutive sentences.

{¶ 2}    We conclude that Goldblum's assignments of error are without merit. Accordingly, the judgment of the trial court is Affirmed.  Because the trial court's judgment entry does not reflect the statutory findings it made for consecutive sentences, this cause is Remanded for a nunc pro tunc order amending the judgment entry to include the tral court's consecutive sentence findings, in accordance with *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659.

## I. Goldblum Molested Several Children Over Almost a Decade

{¶ 3}    Over the course of almost a decade, Keith Goldblum molested his niece, N.D., and some friends of his daughter, L.G., during sleepovers and slumber parties held at his

home. All of the victims described a similar pattern: Goldblum came into the room while the girls were sleeping, lifted the blankets off the girls, pulled down their pajama bottoms and underwear, and inserted either his fingers or an object into their vaginas or gazed at their exposed pubic area.

{¶ 4} Goldblum began molesting his niece, N.D., when she was five years old. He would come into the room where she was sleeping with L.G., pull off her covers and clothing, and then touch her and insert his fingers into her vagina. She would pretend to wake up or turn over, and he would eventually stop and leave the room. As she got older, she would try different things to prevent the molestation, with varying degrees of success. Tr. 635-667.

{¶ 5} R.D. was a close friend of L.G. One night when she was sleeping over at L.G.'s house, she awoke and found Goldblum standing over her side of the twin bed. Goldblum pulled away her covers, slid her pajamas and underpants down, and put a finger in her vagina. He removed his finger when she pretended to stir in her sleep. Later, in the same year, she fell asleep with L.G. on a pull-out couch in the living room. Once again, she awoke to find the covers pulled off, her pajama bottoms pulled down, and Goldblum staring at her pubic area. He was illuminating her pubic area with a flashlight, but then put down the flashlight and inserted something thin and cold, possibly a pen, into her vagina. Goldblum and L.G. eventually moved to a new house, but the same thing happened during sleepovers at the new house. Consequently, R.D. stopped coming over for sleepovers. *Id.* at 299-325. During the time that Goldblum was molesting R.D., occasionally she would pretend to wake up in the middle of the molestation, and Goldblum would make an excuse that he was looking for the cats. *Id.* at 303, 317-318.

{¶ 6} M.W. was friends with L.G. since third grade. Goldblum began molesting M.W.

when she was 11 or 12 years old. The first time it happened, Goldblum stood next to the twin beds in L.G.'s room, he lifted the sheet and pulled away her underpants, and he gazed at her pubic area. She then dove back under the covers, and he left the room. The same thing happened several times when she slept over with L.G. *Id.* at 377-407.

{¶ 7} J.R. also was friends with L.G. On the morning of February 18, 2011, J.R. and a number of other girls spent the night at L.G.'s home. J.R. awoke early the next morning to find Goldblum pulling off her blankets and tugging on the drawstring of her sweatpants. She jumped back and asked him "what the hell" he was doing. He backed off, told her to be quiet, and said he was looking for the cats. J.R. told the other girls, including L.G., what Goldblum had done, then locked herself in the bathroom until her sister came and picked her up. L.G. went with J.R. and M.W. that morning to discuss the abuse with school officials. *Id.* at 503-535.

{¶ 8} That night, L.G. and N.D. told L.G.'s mother about the confrontation between J.R. and Goldblum. The family confronted Goldblum about J.R.'s accusations, and Goldblum explained that he was just looking for the cat. N.D. told the family that he had used that excuse before and that he had been abusing her for years. The next day, N.D. disclosed the abuse to her mother, aunt, grandmother, and a family friend. *Id.* at 664-672. Subsequently, Goldblum was arrested.

## II. Course of the Proceedings

{¶ 9} In May 2012, a Montgomery County Grand Jury returned a 17-count indictment against Goldblum. The indictment included two counts of Voyeurism relating to M.W., in violation of R.C. 2907.08(C); one count of Voyeurism relating to R.D., in violation of R.C.

2907.08(C); one count of Attempted Voyeurism relating to J.R., in violation of R.C. 2907.08(C) and R.C. 2923.02(A); five counts of Rape (under 13) of R.D., in violation of R.C. 2902.02(A)(1)(b); four counts of Rape (under 13) of N.D., in violation of R.C. 2902.02(A)(1)(b); one count of Menacing by Stalking of R.D., in violation of R.C. 2903.211(A), (B); one count of Menacing by Stalking of N.D., in violation of R.C. 2903.211(A), (B); and two counts of Unlawful Sexual Conduct with a Minor, in violation of R.C. 2907.04(A), (B).

{¶ 10}  Goldblum moved to sever the counts of the indictment.  The trial court granted this motion.  Prior to trial, the State asked the trial court to reconsider its ruling in light of the recent decision of the Supreme Court of Ohio in *State v. Williams*, 134 Ohio St.3d 52, 2012-Ohio-5695, 938 N.E.2d 1278.  The trial court granted the motion to reconsider, found that joinder of the counts was proper, and overruled Goldblum's motion to sever the counts for trial.

{¶ 11}  Prior to trial, the State dismissed one count of Voyeurism relating to M.W. and the two counts of Menacing by Stalking.  During trial, the State dismissed one count of Rape involving R.D.  Ultimately, the jury found Goldblum guilty of the remaining thirteen counts. The trial court sentenced Goldblum as follows:  ten years on each of the eight Rape counts; twelve months on each of the two Voyeurism counts; six months on the Attempted Voyeurism count; and three years on each of the two Unlawful Sexual Conduct with a Minor counts.  The sentence on one count of Rape of  R.D. was run consecutively to the sentence on the count of Voyeurism involving M.W. and consecutively to the sentence on one count of Rape of N.D.   All of the remaining sentences were run concurrently with each other, for a total prison sentence of 21 years.  The trial court also designated Goldblum a Tier I sex offender/child victim offender regarding Count I, a Tier II sex offender/child victim offender regarding Counts 13 and 14, and a

Sexually Oriented Offender regarding the remaining counts. The trial court also set forth the terms of post-release control.

{¶ 12}   From this judgment, Goldblum appeals.

### III. The Evidence Was Sufficient to Convict Goldblum
### of Voyeurism and Attempt to Commit Voyeurism

{¶ 13}   Goldblum's First Assignment of Error states:

THE APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT DID NOT ORDER AN ACQUITTAL OF THE THREE VOYEURISM-RELATED CHARGES AS THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR THEM.

{¶ 14}   When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on at least one element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 15}   R.C. 2907.08(C) provides: "No person, for the purpose of sexually arousing or

gratifying the person's self, shall commit trespass or otherwise surreptitiously invade the privacy of another to videotape, film, photograph, otherwise record, or spy or eavesdrop upon the other person in a state of nudity if the other person is a minor."

{¶ 16} Goldblum contends that the State failed to prove the purpose element contained in R.C. 2907.08(C). According to Goldblum, there is no credible evidence that Goldblum was in a state of undress or engaged in masturbation and there is no circumstantial evidence that Goldblum had pornography or sexual devices. Rather, according to Goldblum, the only evidence of record to infer the purpose element is that he looked up M.W.'s shorts. Brief, p. 5.

{¶ 17} Although Goldblum is correct that the purpose element is often met with evidence of a defendant in a state of undress, masturbating, or both, a purpose of sexual gratification may be inferred from other circumstances. *State v. Wilson*, 192 Ohio App.3d 189, 2011-Ohio-155, 948 N.E.2d 515, ¶ 45 (11th Dist.). For example, if pornography is part of the circumstances surrounding the invasion of the victim's privacy, then a purpose of sexual arousal or gratification may be inferred. (Citations omitted.) *Id.* "The courts have also held that the sexual-arousal and/or gratification element may be inferred when there is no innocent, i.e., nonsexual, explanation for the offender's conduct." (Citations omitted.) *Id.* at ¶ 47.

{¶ 18} M.W. testified that when she was in the fifth or sixth grade, Goldblum came into the room where she was sleeping, lifted the sheet that covered her, pulled down her pajama bottoms, and moved the fabric of her underpants out of the way so that he could stare at her vaginal area. She testified that he did it to her several more times when she stayed overnight. N.D. described similar experiences. Goldblum would come into the room when she was sleeping, removed some of her clothing that was in the way, and put his fingers inside of her.

R.D. testified that when she was in first grade staying overnight, she woke up to find her pants off and Goldblum staring at her vaginal area, which he was illuminating with a flashlight. R.D. also testified that after Goldblum looked at her with the flashlight, he put something smaller and cold, like a pen, insider her vagina. And on several occasions he came into the room, pulled off the covers, and put one or more fingers inside of her. J.R. testified that she awoke one night when she was almost 16 years old and Goldblum was tugging on the drawstrings of her sweatpants.

{¶ 19} The testimony of the victims is overwhelming and demonstrates the purpose element of "sexually arousing or gratifying the person's self." *Wilson* at ¶ 47. Although Goldblum contends that the victims are not credible, it was within the province of the jury to credit the testimony of these witnesses.

{¶ 20} Goldblum also contends that there was no evidence of a trespass or invasion of privacy. According to Goldblum, he did not hide his actions from M.W. and did these acts to her and directly in front of her. In other words, there was no secretive nature to it. Brief, p. 5. We do not agree. Goldblum committed a number of acts while the victims were sleeping, which satisfies the "surreptitiously invade the privacy of another" element.

{¶ 21} Goldblum's First Assignment of Error is overruled.

### IV. Goldblum's Convictions Are Not Against
### the Manifest Weight of the Evidence

{¶ 22} Goldblum's Second Assignment of Error states:

THE APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL AS ALL OF HIS CONVICTIONS ARE AGAINST THE MANIFEST

WEIGHT OF THE EVIDENCE AND THE JURY'S VERDICT WAS INCONSISTENT WITH THE EVIDENCE AND TESTIMONY PRESENTED.

**{¶ 23}** "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Cassell*, 2d Dist. Clark No. 09CA0064, 2011-Ohio-23, ¶ 46. When a conviction is challenged on appeal as being against the manifest weight of the evidence, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 24}** Goldblum contends that the jury's verdicts are against the manifest weight of the evidence because there was no physical evidence to corroborate the victims' allegations. Furthermore, Goldblum contends that "J.R.'s testimony is totally contradicted by the other evidence. M.W., R.D., and N.D.'s testimony clearly defies reason and common sense. For hundreds of incidents to have occurred with others in the room and house without detection is incredible." Brief, p. 8.

**{¶ 25}** We have reviewed the testimony of record. The State presented sufficient victim testimony, if credited, that supports Goldblum's convictions beyond a reasonable doubt. Overall, Goldblum takes issue with whose testimony the jury credited. The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "The decision

whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence   of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).  We find no basis to overrule the jury's decision to credit the testimony of the victims in this case.

{¶ 26}  Goldblum's convictions are not against the manifest weight of the evidence. Consequently, the Second Assignment of Error is overruled.

**V. The Trial Court Did Not Abuse Its Discretion**

**in Overruling Goldblum's Motion to Sever**

{¶ 27}    Goldblum's Third and Fourth Assignments of Error state:

THE APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT SUBSTANTIVELY MISAPPLIED *STATE v. WILLIAMS*, 2012-OHIO-5695, IN REVERSING ITS RULING REGARDING JOINDER.

THE APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT, WITHOUT LEGAL AUTHORITY TO DO SO, ENTERTAINED A MOTION TO RECONSIDER THE COURT'S PREVIOUS SEVERANCE RULING AND REVERSED ITS DECISION.

{¶ 28}  Initially, we will address Goldblum's contention that the trial court was without authority to reconsider its ruling regarding Goldblum's motion to sever.  The trial court's ruling on Goldblum's motion to sever was interlocutory in nature.  Therefore, the trial court had the inherent authority to reconsider its ruling.  Once the State brought a recent Supreme Court of

Ohio decision to the trial court's attention, it was reasonable for the trial court to reconsider its previous determination. Consequently, we find no error in the trial court's decision to reconsider its ruling on Goldblum's motion to sever.

{¶ 29} The decision whether to grant a motion to sever certain counts of an indictment from other counts of the indictment is guided by Crim.R. 8 and 14. In *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 49-50, the Supreme Court of Ohio explained the analysis that goes into a determination on joinder and severance:

"The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.' " *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293. Crim.R. 8(A) also allows joinder of two or more offenses that "are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Notwithstanding the policy in favor of joinder, an accused may move to sever counts of an indictment on the grounds that he or she is prejudiced by the joinder of multiple offenses. *See* Crim.R. 14. * * *

The state may rebut a defendant's claim of prejudicial joinder in two ways. The first way is by satisfying the "other acts" test. *Id.* If in separate trials the state could introduce evidence of the joined offenses as "other acts" under Evid.R. 404(B), a defendant cannot claim prejudice from the joinder. *Id. See, also, State v. Coley* (2001), 93 Ohio St.3d 253, 259-260, 754 N.E.2d 1129. The state may also negate a claim of prejudice by satisfying the less stringent "joinder test,"

which requires a showing "that evidence of each crime joined at trial is simple and direct." *Lott*, 51 Ohio St.3d at 163, 555 N.E.2d 293; *see, also, State v. Torres* (1981), 66 Ohio St.2d 340, 344, 20 O.O.3d 313, 421 N.E.2d 1288.

{¶ 30}   Evid.R. 404(B) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.   It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. * * *

{¶ 31}   R.C. 2945.59 similarly permits the admission of other-acts evidence tending to show a defendant's "motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question."   *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 68.

{¶ 32}   Generally, evidence of other acts is admissible if (1) it is offered for a purpose other than to prove the character of a person in order to show action in conformity with that character, Evid.R. 404(B), (2) it is relevant when offered for that purpose, Evid.R. 401, and (3) the danger of unfair prejudice does not substantially outweigh its probative value, Evid.R. 403. *Kirkland* at ¶ 68, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.   A trial judge has considerable discretion to determine whether the specific evidence is of such a nature that it falls within one of the other purposes under Evid.R. 404(B) for which the evidence may be admitted.   *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 19.   "Unless the trial court has 'clearly abused its discretion and the defendant has

been materially prejudiced thereby, [appellate courts] should be slow to interfere' with the exercise of such discretion." *Kirkland* at ¶ 67, quoting *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

{¶ 33} Goldblum contends that the other act evidence offered by the State in this case was not offered for any of the permissible purposes outlined in Evid.R. 404(B) or R.C. 2945.59. The State counters that "evidence that Appellant engaged in inappropriate conduct with other young female friends of his daughter was relevant to prove a proper purpose under Evid.R. 404(B), specifically, Appellant's intent, his plan, scheme, or system, and to refute his claim that the girls were mistaken about what he was doing and that they had falsely accused him." Brief, p. 21.

{¶ 34} We conclude that the trial court did not abuse its discretion in overruling Goldblum's motion to sever. Goldblum conceded at trial that he would occasionally manipulate the blankets on the girls who were asleep at his place. However, he testified that he did this to check to see if they were hiding any games under the blankets. Also, he testified that J.R. was mistaken about what he was doing when she woke up on the morning of February 18, 2011. According to Goldblum, he was simply checking for the cat when she woke up and saw him in the basement. The testimony of other act evidence in this case rebutted Goldblum's testimony that he was simply looking for the cat or making sure there were no games hidden underneath the girls' blankets. Furthermore, the other act evidence assisted the trier of fact in determining Goldblum's purpose or intent, especially relating to the Voyeurism charges. As we noted in Part III above, the purpose element in R.C. 2907.08(C) may be inferred "when there is no innocent, i.e., nonsexual, explanation for the offender's conduct." *State v. Wilson*, 2011-Ohio-155, at ¶

47. The other acts evidence rebutted Goldblum's contention that there were innocent, nonsexual explanations for his removal of the blankets and presence near the girls when they suddenly awoke.

{¶ 35} The record supports the trial court's exercise of its discretion to allow the introduction of other acts evidence. Furthermore, based on our review of the record, we conclude that the danger of unfair prejudice by allowing the other acts evidence did not substantially outweigh its probative value. *Kirkland* at ¶ 68, citing *Williams* at ¶ 20. Also, "[t]he trial court reduced any danger of unfair prejudice in its limiting instruction to the jury." *Kirkland* at ¶ 70. Consequently, the trial court did not abuse its discretion by overruling Goldblum's motion to sever.

{¶ 36} Goldblum's Third and Fourth Assignments of Error are overruled.

### VI. Goldblum Has Failed to Cite to the Record to Establish Prejudicial Error From the State's Use of Leading Questions on Direct Examination

{¶ 37} Goldblum's Fifth Assignment of Error states:

THE APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT USED AN IMPROPER DEFINITION OF WHAT CONSTITUTES A "LEADING QUESTION" AND ALLOWED THE STATE TO PRESENT THE SUBSTANCE OF THEIR CASE THROUGH LEADING QUESTIONS.

{¶ 38} "A leading question is 'one that suggests to the witness the answer desired by the examiner.' " (Citation omitted.) *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900

N.E.2d 565, ¶ 149. Evid.R. 611(C) provides that: "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross-examination." Moreover, the trial court has discretion to allow leading questions on direct examination. *Diar* at ¶ 149.

{¶ 39} Goldblum contends that the State's "entire case was rampant with leading questions of every one of its witnesses." Brief, p. 21. According to Goldblum, "[t]he trial court created the problem and prejudice to the Appellant when he responded to defense objections to leading questions raised at Tr. 304, 307." *Id.*

{¶ 40} In support of his assignment of error, Goldblum cites only to pages 304 and 307 of the trial transcript. Page 304 contains an objection by Goldblum's counsel on the basis of a leading question. The trial court overruled this objection when it appeared that the response the State received from the witness was not the response the State was expecting. Tr. 304. Goldblum does not explain how this alleged leading question prejudiced him. Then, at pages 307-309 of the transcript, the following exchange occurred:

Q      Did he stop with just looking at that area with the flashlight?

A      Yes.

Q      Did he do something in addition though to just looking with that flashlight?

A      No.

Q      Did he put his fingers inside you - -

MR. ZANER: Objection. Leading.

THE COURT: Let's approach.

(At sidebar.)

THE COURT: Just so you know, I take the position rightly or wrongly that if a question can be answered yes or no, it's not leading. So, that's been my position. And that's - - I'm going to stick with that position. And you can make the objection - -

MR. ZANER: Um-hum.

THE COURT: - - but if it's a yes or no. Now, this is a little bit different in that she said, "No." She said, "No." And I take it that that's not the answer you expected.

MS. CLAYPOOLE: Well, because we are guided by the bill of particulars and it's happened so many times, but we are alleging specific times. I think (indiscernible) we would be allowed to lead to get to the charged counts.

MR. ZANER: And, Judge, our position would be it should be more open-ended questions than you do anything else at the time. (Indiscernible.)

MS. CLAYPOOLE: Well - -

THE COURT: Well, what you can do it seems to me is, do you remember the time - - kind of get her beyond this. Do you remember a time when Mr. Goldblum used a flashlight in a similar way that something more happened?

MS. CLAYPOOLE: (Indiscernible.) I need to ask the questions (indiscernible). So, it's my own fault. (Indiscernible) ask me - - ask the question

correctly, Judge.

THE COURT: Okay.   All right.

(Sidebar concluded.)

THE COURT: There's really no ruling on the objection, because the objection occurred before the question was completely out.   So, let's hear the question.   We'll go and we'll see where we're at.

{¶ 41}   The State proceeded to ask additional questions of the witness and Goldblum's counsel did not raise any objection on the basis of leading questions.   Tr. 309-327.   Based on our review of the record, we conclude that Goldblum has failed to cite to the record instances in which the State used leading questions or instances in which the trial court improperly allowed the use of leading questions that prejudiced Goldblum.   App.R. 12(A)(2), 16(A)(7).

{¶ 42}   Goldblum's Fifth   Assignment of Error is overruled.

### VII. Goldblum Has Failed to Demonstrate Prosecutorial Misconduct and Resulting Prejudice

{¶ 43}    Goldblum's Sixth Assignment of Error states:

THE APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE PROSECUTOR ENGAGED IN MISCONDUCT IN HER CLOSING STATEMENT AT TRIAL, WHICH CONDUCT SUBSTANTIALLY PREJUDICED THE APPELLANT AND MISLED THE JURY.

{¶ 44}   Our review of claims of prosecutorial misconduct focuses on whether the prosecutor's remarks were improper and, if so, whether those comments prejudicially affected the

substantial rights of the defendant. *State v. Jones*, 90 Ohio St.3d 403, 420, 739 N.E.2d 300 (2000). The touchstone of the analysis is the fairness of the trial, not the culpability of the prosecutor. *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Where it is clear beyond a reasonable doubt that the jury would have found the defendant guilty, even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. *State v. Underwood*, 2d Dist. Montgomery No. 24186, 2011-Ohio-5418, ¶ 21. We review allegations of prosecutorial misconduct in the context of the entire trial. *State v. Stevenson*, 2d Dist. Greene No. 2007-CA-51, 2008-Ohio-2900, ¶ 42, citing *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

**{¶ 45}** Goldblum contends that "[t]he Prosecutor, in closing, attempted to evoke sympathy for the complainants based upon the Appellant invoking his constitutional right to cross-examine witnesses as well as calling witnesses to his defense." Brief, p. 22. In support of his contention, Goldblum cites to pages 1300, 1306, 1345, and 1348 of the trial transcript. We have reviewed these pages of the trial transcript and conclude that the prosecutor's remarks were not improper.

**{¶ 46}** Goldblum next contends that "[t]he Prosecutor repeatedly tried to use a 'class warfare' tactic versus the Appellant." Brief, p. 22. In support of this contention, Goldblum cites to pages 1340-1341 of the trial transcript. We have reviewed those pages of the trial transcript. On page 1340 of the transcript, the prosecutor attempted to make the point that just because the defendant is a physician and is charitable does not necessarily mean that he could not have committed the crimes with which he was charged. She brought up this point to rebut the positive character evidence that the defense introduced through witnesses. The point the

prosecutor was trying to make, in and of itself, was not improper. However, we acknowledge that the prosecutor started to stray a little further in trying to make this point by beginning to talk about the "fancy house" that Goldblum lived in. Tr. 1340. At this point, however, the trial court instructed the prosecutor to "back away from that." *Id.* at 1341. Based on our review of the prosecutor's closing statement, we disagree with Goldblum's contention that the State tried to use a class warfare tactic against him.

{¶ 47} Goldblum also contends that "[t]he Prosecutor also referenced items not in evidence. She claimed that L.G. had testified to the Appellant bending over her friends on previous occasions while they slept." Brief, p. 22. In support of this contention, Goldblum cites to pages 1301 and 1352 of the trial transcript. Based on our review of the record, we do not agree that the State referred to items not in evidence. Furthermore, Goldblum failed to object to these statements made by the State during closing, and had the opportunity during his closing statement to point out and challenge any inaccuracies made by the State during closing statement. Therefore, we conclude that Goldblum has failed to establish prosecutorial misconduct and resulting prejudice.

{¶ 48} Goldblum's Sixth Assignment of Error is overruled.

### VIII. The Trial Court Made the Necessary Findings to Impose Consecutive Sentences

{¶ 49} Goldblum's Seventh Assignment of Error states:

THE TRIAL COURT FAILED TO FOLLOW THE PURPOSES OF FELONY SENTENCING UNDER R.C. 2929.11, FAILED TO CONSIDER THE

SERIOUSNESS/RECIDIVISM FACTORS UNDER R.C. 2929.12 AND FAILED TO MAKE THE NECESSARY FINDINGS UNDER R.C. 2929.14(C) FOR THE IMPOSITION OF CONSECUTIVE SENTENCES.

**{¶ 50}** On a silent record, a trial court is presumed to have considered the statutory purposes and principles of sentencing, and the statutory seriousness and recidivism factors. *State v. Carlton*, 2d Dist. Montgomery No. 26086, 2014-Ohio-3385, ¶ 18. There is nothing in the record in the case before us to overcome that presumption.

**{¶ 51}** R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it finds that: (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) "[a]t least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." R.C. 2929.14(C)(4)(b).

**{¶ 52}** In most cases, "[t]he trial court is not required to give reasons explaining these findings, nor is the court required to recite any 'magic' or 'talismanic' words when imposing consecutive sentences. * * * Nevertheless, the record must reflect that the court made the findings required by the statute." *State v. Temple*, 2d Dist. Clark No. 2012-CA-65, 2013-Ohio-3843, ¶ 21, quoting *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 86.

**{¶ 53}** At sentencing, the trial court stated, in part:

And that sentence then is a sentence of 21 years at the Corrections Reception Center, with 440 days of jail-time credit. Now, because I have made certain of these sentences a consecutive sentence, there are certain findings required by Ohio Revised Code 2929.14(C)(4), and I am now going to make those required findings.

First, I find that the imposed consecutive sentences are necessary to punish the defendant, and the imposed consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger the defendant poses to the public.

And, secondly, I find that the counts where a consecutive sentence is being imposed reflect at least two multiple offenses committed as part of multiple courses of conduct. And the harm caused by such offenses is so great and unusual that no single prison term for all of the offenses committed as part of the defendant's multiple courses of conduct adequately reflects the seriousness, the seriousness of such conduct.

Tr. 1427-28.

{¶ 54} When imposing Goldblum's sentence, the trial court made the findings required by R.C. 2929.14(C)(4). We do not "clearly and convincingly" find either that the record does not support the trial court's findings under R.C. 2929.14(C)(4), or that the sentence is otherwise contrary to law. R.C. 2953.08(G)(2).

{¶ 55} But a trial court is required not only to make the statutory findings required for consecutive sentences at the sentencing hearing, but also to incorporate its findings into its

sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. Accordingly, this cause is Remanded for the purpose of allowing the trial court to enter a nunc pro tunc amendment of its judgment entry to incorporate the statutory consecutive-sentence findings it made at the sentencing hearing. *See State v. Mayberry*, 2d Dist. Montgomery No. 26025, 2014-Ohio-4706, ¶ 34.

**{¶ 56}** Goldblum's Seventh Assignment of Error is Overruled.

### IX. Goldblum Failed to Establish Cumulative Error

**{¶ 57}** Goldblum's Eighth Assignment of Error states:

THE APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL AS THE ERRORS COMMITTED BY THE TRIAL COURT AND THE PROSECUTOR COMBINED TO DENY THE APPELLANT A FAIR TRIAL.

**{¶ 58}** The "cumulative error" doctrine states that a "conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the numerous instances of the trial court errors do not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). In order to find cumulative error, we must find: (1) that multiple errors were committed at trial, and (2) there is a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. *State v. Kelly*, 2d Dist. Greene No. 2004-CA-20, 2005-Ohio-305, ¶ 33. Where no individual, prejudicial error has been shown, there can be no cumulative error. *State v. Jones*, 2d Dist. Montgomery No. 20349, 2005-Ohio-1208, ¶ 66.

{¶ 59} Goldblum has failed to establish any error, let alone cumulative error. Consequently, his Eighth Assignment of Error is overruled.

## X. Conclusion

{¶ 60} All of the assignments of error having been overruled, the judgment of the trial court is Affirmed, and this cause is Remanded for entry of a nunc pro tunc order amending the judgment entry to include the statutory consecutive-sentence findings.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck
Carley J. Ingram / Kirsten A. Brandt
Lorin J. Zaner
Hon. Michael Tucker