[Cite as *State v. Willard*, 2021-Ohio-2552.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

STATE OF OHIO,

          Plaintiff-Appellee,

    - v -

JEFFREY ALLEN WILLARD,

          Defendant-Appellant.

CASE NO. 2020-T-0040

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2019 CR 001106

## O P I N I O N

Decided: July 26, 2021
Judgment: Affirmed in part, modified in part, and affirmed as modified.

*Dennis Watkins*, Trumbull County Prosecutor; *Ashleigh Musick* and *Ryan J. Sanders*, Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Stephen A. Turner*, Turner, May & Shepherd, 185 High Street, N.E., Warren, OH 44481 (For Defendant-Appellant).

MARY JANE TRAPP, P.J.

{¶1} Appellant, Jeffrey Allen Willard ("Mr. Willard"), appeals his judgment of conviction from the Trumbull County Court of Common Pleas following his guilty pleas to having weapons while under disability, grand theft, grand theft of a motor vehicle, failure to comply with order or signal of police officer, escape, and obstructing official business.

{¶2} Mr. Willard presents two assignments of error, which we address in reverse order.

{¶3} In his second assignment of error, Mr. Willard contends he did not enter his guilty pleas knowingly, intelligently, or voluntarily because the trial court did not comply with Crim.R. 11(C)(2)(a). Specifically, he contends the trial court failed to inform him of potential consecutive prison terms and restitution.

{¶4} In his first assignment of error, Mr. Willard contends the trial court abused its discretion in ordering him to pay restitution in the amount of $4,500 for police officer overtime because there is nothing in the record indicating the amount bears a reasonable relationship to the loss the police department actually suffered.

{¶5} In response to this court's sua sponte order for supplemental briefing, Mr. Willard contends under his first assignment of error that the trial court's restitution order for officer overtime was contrary to law because the Liberty Township Police Department was not a "victim" for the purposes of R.C. 2929.18(A)(1). The state concedes error on the latter issue.

{¶6} After a careful review of the record and pertinent law, we find as follows:

{¶7} (1) The trial court complied with Crim.R. 11(C)(2)(a) with respect to Mr. Willard's maximum prison terms. While the trial court did not inform Mr. Willard about discretionary, consecutive prison terms, the trial court complied with the precedent applying Crim.R. 11(C)(2)(a) that indicates this is not required.

{¶8} (2) The trial court did not comply with Crim.R. 11(C)(2)(a) by failing to inform Mr. Willard about potential restitution to the Liberty Township Police Department as part of his sentence. However, Mr. Willard has not shown resulting prejudice, i.e., that he would not have pleaded guilty otherwise.

2

{¶9} (3) We clearly and convincingly find that the trial court's order of restitution for officer overtime is contrary to law because the Liberty Township Police Department was not a "victim" that suffered an "economic loss" pursuant to R.C. 2929.18(A)(1).

{¶10} Thus, we affirm the trial court's judgment in part, modify in part, and affirm as modified.

### Substantive and Procedural History

{¶11} In February 2020, the Trumbull County Grand Jury indicted Mr. Willard on the following six felony counts: having weapons while under disability, a felony of the third degree, in violation of R.C. 2923.13(A)(1) and (B) (count 1); grand theft, a felony of the third degree, in violation of R.C. 2913.02(A)(1) and (B)(4) (count 2); grant theft of a motor vehicle, a felony of the fourth degree, in violation of R.C. 2913.02(A)(2) and (B)(5) (count 3); failure to comply with order or signal of police officer, a felony of the third degree, in violation of R.C. 2921.331(B), (C)(1), and (C)(5)(a)(ii) (count 4); escape, a felony of the third degree, in violation of R.C. 2921.34(A)(1) and (C)(2)(b) (count 5); and obstructing official business, a felony of the fifth degree, in violation of R.C. 2921.31(A) and (B) (count 6).

{¶12} Mr. Willard pleaded not guilty to the charges. He subsequently withdrew his former pleas of not guilty and entered written and oral pleas of guilty to all six charges.

{¶13} The parties jointly recommended concurrent prison terms of 24 months on count 1 (having weapons while under disability); 24 months on count 2 (grand theft); 18 months on count 3 (grand theft of a motor vehicle); 24 months on count 5 (escape); 24 months on count 6 (obstructing official business); and a mandatory consecutive prison

3

term of 12 months on count 4 (failure to comply with order or signal of police officer), for an aggregate recommended prison term of 36 months.

{¶14} Among other notices, the plea agreement stated as follows:

{¶15} "I understand that court costs, restitution and other financial sanctions including day fine, standard fine, and reimbursement for the cost of community sanctions may be imposed.

{¶16} "I understand that if I am charged with multiple counts, the Court could impose consecutive sentences."

### Plea Hearing

{¶17} The trial court held a plea hearing and engaged in a colloquy with Mr. Willard. Mr. Willard indicated that he had read the plea agreement, had reviewed it with his attorney, and had no questions about it. He also confirmed his understanding that the sentence was not binding on the court and that the court could impose whatever sentence it deemed appropriate within the guidelines.

{¶18} The trial court advised Mr. Willard of the potential penalties associated with each of the six charges, including the ranges of potential prison terms, the maximum fines, and whether prison was mandatory. With respect to count 4 (failure to comply with order or signal of police officer), the trial court advised Mr. Willard that any prison term imposed was required to be served consecutive to any other prison term. Mr. Willard indicated that he understood the trial court's advisements and entered guilty pleas to all six charges.

{¶19} As a factual basis, the state indicated as follows:

4

{¶20} "[O]n or about the date referenced in the indictment, in Trumbull County, State of Ohio, officers with the Liberty Township Police Department got dispatched to a bar in their jurisdiction for a drunk and disorderly person. When they arrived they came into contact with the Defendant who was, in fact, drunk and disorderly. They attempted to take him into custody for that offense. He struggled with them. He struggled with the arrest.

{¶21} "[U]ltimately they were able to take him into custody. They placed him in the back of one of the Liberty Township cruisers. While they finished their paperwork, the Defendant climbed through the window from the back seat to the front seat and he was able to take off in the police cruiser.

{¶22} "The police cruiser contained a shotgun that was the property of the Liberty Township Police Department and the Defendant was under disability for Possession of Firearms.

{¶23} "[D]uring that time, the police attempted to stop this Defendant from leaving the scene, as he was in custody, and he refused to do so, driving off with the vehicle, ultimately crashing into another motor vehicle.

{¶24} "To prove these allegations the State would have brought forth the testimony of the arresting officers and witnesses at the scene."

{¶25} The trial court determined that Mr. Willard made knowing, intelligent, and voluntary guilty pleas; had been informed of his constitutional rights; and understood the nature of the charges, the effect of changing his pleas, and the possible penalties. Accordingly, the court accepted Mr. Willard's guilty pleas and found him guilty.

5

{¶26} Mr. Willard waived a presentence investigation, and the matter proceeded immediately to sentencing.

*Sentencing*

{¶27} During the sentencing portion of the hearing, the trial court asked the state whether there were any issues of restitution. The state responded that the Liberty Township Police Department had submitted a victim response form requesting restitution of $10,000 as a result of alleged damage to the police cruiser and $4,500 in officer overtime as a result of the incident. The state indicated it was unaware until after the start of the hearing that the form had been provided and did not know if defense counsel had seen it. Defense counsel indicated that he had not.

{¶28} Following defense counsel's review of the form, the following exchange occurred:

{¶29} "[DEFENSE COUNSEL]: Your Honor, the only thing I can see, there was insurance on this vehicle, and they checked that it is, so I don't know that they're out $10,000. It's purely overtime.

{¶30} "[THE TRIAL COURT]: Are you able to verify that?

{¶31} "[THE STATE]: Well, Your Honor, it does say that there was insurance for the vehicle, so I would assume that they were made whole. Now, I have not received anything from the insurance company. * * * With regard to the overtime, it's not unheard of for police departments to ask for that, though it's rare. The overtime amount is $4,500.

{¶32} "[DEFENSE COUNSEL]: That's the first time I heard over time.

{¶33} "[THE TRIAL COURT]: You would agree with the defense that the insurance covers the car?

6

Case No. 2020-T-0040

{¶34} "[THE STATE]:  It's marked here, yes.

{¶35} "[THE TRIAL COURT]:  So the issue then is the $4,500 overtime to find this Defendant after he stole the police car?

{¶36} "[THE STATE]:  Correct.

{¶37} "[THE TRIAL COURT]:  Anything else on the issue of restitution?

{¶38} "[THE STATE]:  No.

{¶39} "[THE TRIAL COURT]:  Counselor, is there anything you would like to say on behalf of Mr. Willard?

{¶40} "[DEFENSE COUNSEL]:  Your Honor, we would just ask the Court to go along with the agreement for the time between the State and the Defense."

{¶41}  The trial court sentenced Mr. Willard to prison terms of 36 months on count 1 (having weapons while under disability); 24 months on count 2 (grand theft); 18 months on count 3 (grand theft of a motor vehicle); 36 months on count 4 (failure to comply with order or signal of police officer); 24 months on count 5 (escape); and 12 months on count 6 (obstructing official business).[1]  The trial court ordered the prison terms in counts 1, 2, and 3 to be served concurrent to each other; the prison terms in counts 5 and 6 to be served concurrent to each other but consecutive to the prison terms in counts 1, 2, and 3; and the prison term in count 4 to be served consecutive to all other counts, for an aggregate prison term of 96 months.

---

1. The hearing transcript indicates that the trial court imposed a prison term of 24 months on count 6, while the subsequent judgment entry states 12 months.  Mr. Willard has not challenged this discrepancy on appeal.

Case No. 2020-T-0040

{¶42} The trial court stated that it had "reviewed the appropriate documentation" and ordered Mr. Willard to pay restitution to the Liberty Township Police Department in the sum of $4,500 "for overtime as necessary to apprehend" Mr. Willard.

{¶43} The hearing transcript indicates that following the trial court's pronouncement of sentence, Mr. Willard voiced his displeasure with the length of his aggregate prison sentence by using expletives and remarking, "That's not what I agreed to."

{¶44} The trial court subsequently issued judgment entries memorializing Mr. Willard's guilty pleas and sentences.

{¶45} Mr. Willard appealed and now raises the following two assignments of error:

{¶46} "[1.] The trial court abused its discretion when it ordered restitution for expenses incurred by the police department for officer overtime.

{¶47} "[2.] The trial court erred when [it] found that appellant's change of plea was made knowingly, intelligently and voluntarily."

{¶48} Based on our consideration of the record and briefs, this court, sua sponte, ordered the parties to file supplemental briefs in relation to Mr. Willard's first assignment of error to address whether the Liberty Township Police Department constitutes a "victim" for purposes of R.C. 2929.18(A)(1). Both parties filed supplemental briefs and agreed that the Liberty Township Police Department does not constitute a "victim" under R.C. 2929.18(A)(1) and, therefore, that the trial court's restitution order was erroneous.

{¶49} We review Mr. Willard's assignments of error in reverse order.

8

### Guilty Pleas

{¶50}   In his second assignment of error, Mr. Willard contends he did not enter his guilty pleas knowingly, intelligently, or voluntarily because the trial court failed to comply with Crim.R. 11(C)(2)(a) during the plea colloquy.

### Standard of Review

{¶51}   This court reviews de novo whether the trial court accepted a plea in compliance with Crim.R. 11.  *State v. Dundics*, 2016-Ohio-1368, 62 N.E.3d 1013, ¶ 10 (11th Dist.).

### Crim.R. 11(C)(2)

{¶52}   "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily.   Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution."  *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). Crim.R. 11 was adopted to give detailed instructions to trial courts on the procedures to follow before accepting pleas of guilty.  *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, ¶ 9.

{¶53}   Crim.R. 11(C)(2), provides, in relevant part, as follows:

{¶54}   "In felony cases the court * * * shall not accept a plea of guilty * * * without first addressing the defendant personally and doing all of the following:

{¶55}   "(a) *Determining that the defendant is making the plea voluntarily, with understanding* of the nature of the charges and *of the maximum penalty involved*, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

9

{¶56} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * *, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

{¶57} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." (Emphasis added.) Crim.R. 11(C)(2)(a) through (c).

{¶58} The Supreme Court of Ohio most recently addressed appellate review of a trial court's compliance with Crim.R. 11 in *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286.

{¶59} According to the court, the focus in reviewing pleas is not "on whether the trial judge has '[incanted] the precise verbiage' of the rule, * * * but on whether the *dialogue* between the court and the defendant demonstrates that the defendant understood the consequences of his plea." (Emphasis added.) *Id.* at ¶ 12, quoting *State v. Stewart*, 51 Ohio St.2d 86, 92, 364 N.E.2d 1163 (1977).

{¶60} The court also stated that its prior caselaw had "muddled" the required analysis "by suggesting different tiers of compliance with the rule." *Id.* at ¶ 17. For instance, "[t]he court has, in some instances, said that "'partial' compliance is sufficient absent a showing of prejudice from the failure to 'substantially' comply." *Id.*, quoting *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 32. Further, "the court has indicated that when a trial court has 'substantially' complied, the defendant must show

10

prejudice from the failure to 'strictly' or 'literally' adhere to the rule." *Id.*, quoting *State v. Nero*, 56 Ohio St.3d 106, 107-108, 564 N.E.2d 474 (1990), and *Stewart* at 93.

{¶61} According to the court, "those formulations have served only to unduly complicate what should be a fairly straightforward inquiry. Properly understood, the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.*

{¶62} With the above principles in mind, we apply the three-part *Dangler* test.

### *Consecutive Prison Terms*

{¶63} Mr. Willard contends that the trial court did not comply with Crim.R. 11(C)(2)(a) by failing to inform him of the possibility of consecutive prison terms for counts 1-3, 5, and 6. We disagree.

{¶64} In *State v. Johnson*, 40 Ohio St.3d 130, 532 N.E.2d 1295 (1988), the Supreme Court of Ohio determined that a trial court complies with Crim. R. 11(C)(2)(a) by informing a defendant of the maximum sentence for each of the individual crimes with which he is charged. *Id.* at 134. The court held that "[f]ailure to inform a defendant who pleads guilty to more than one offense that the court may order him to serve any sentences imposed consecutively, rather than concurrently, is not a violation of Crim.R. 11(C)(2), and does not render the plea involuntary." *Id.* at syllabus.

{¶65} A plurality of the court recently questioned the applicability of *Johnson* under the current version of Crim.R. 11(C)(2)(a), which requires the trial court to ensure the defendant understands the nature of the "charges" rather than the "charge." *State v.*

11

*Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 15 ("Crim.R. 11(C)(2)(a) has been amended since *Johnson* so that a single plea can now apply to multiple charges, *see* 83 Ohio St.3d xciii, cix (effective July 1, 1998)").  However, the court did not overrule its holding in *Johnson*.  *See id.* at ¶ 47 (Kennedy, J., dissenting) ("[W]e have never held that our holding in *Johnson* has been abrogated by the amended rule").

{¶66}  In *Bishop*, the court addressed the certified question of "[w]hether a criminal defendant on [postrelease control] for a prior felony must be advised, during his plea hearing in a new felony case, of the trial court's ability under R.C. 2929.141 to terminate his existing [postrelease control] and to impose a consecutive prison sentence for the [postrelease-control] violation."  *Id.* at ¶ 1.

{¶67}  In answering the certified question in the affirmative, the court distinguished *Johnson*, stating as follows:

{¶68}  "[W]hat happened to the defendant in *Johnson* is a far cry from what happened to Bishop.  Johnson was told of his potential sentences for each individual offense; the trial court just failed to tell Johnson the sentences for each offense could run consecutively.  Here, the trial court told Bishop that he could receive a maximum sentence of 12 months for his fifth-degree-felony conviction.  But the trial court did not tell Bishop that he was also subject to a separate consecutive 12-month sentence for his postrelease-control violation."  *Id.* at ¶ 16.

{¶69}  This court and others have recognized the court's distinction in *Bishop* and have continued to apply *Johnson*.  *See, e.g.*, *State v. Shepard*, 11th Dist. Ashtabula No. 2019-A-0024, 2019-Ohio-3995, ¶ 44, fn. 1; *State v. Roberts*, 9th Dist. Medina No. 19CA0004-M, 2019-Ohio-4393, ¶ 6-7; *State v. Ellis*, 5th Dist. Coshocton Nos.

12

Case No. 2020-T-0040

2019CA0014 and 2019CA0015, 2020-Ohio-1130, ¶ 9-12; *State v. Nelson*, 8th Dist. Cuyahoga Nos. 109072, 109073, and 109260, 2020-Ohio-6993, ¶ 45-51.

{¶70}  Courts have also distinguished *Johnson* in the context of a "mandatory" consecutive prison term imposed pursuant to R.C. 2921.331(D).  *See, e.g., State v. Bailey*, 9th Dist. Summit Nos. 28003, 28004, and 28005, 2016-Ohio-4937, ¶ 13; *State v. Norman*, 8th Dist. Cuyahoga, No. 91302, 2009-Ohio-4044, ¶ 7; *State v. Pitts*, 159 Ohio App.3d 852, 2005-Ohio-1389, 825 N.E.2d 695, ¶ 22 (6th Dist.).

{¶71}  R.C. 2921.331(D) provides that if an offender is sentenced to prison for a felony offense of failure to comply with an order or signal of a police officer pursuant to division (C)(4) or (5), the offender "shall serve the prison term consecutively to any other prison term or mandatory prison term imposed upon the offender."  Courts have held that the trial court must inform the defendant of the consecutive nature of the sentences, as it is part of the maximum penalty.  *See Bailey* at ¶ 13, quoting *Norman* at ¶ 7 ("When a statute requires that sentences be served consecutively, the consecutive nature 'directly affects the length of the sentence, thus becoming a crucial component of what constitutes the "maximum" sentence'").

{¶72}  Here, the trial court properly explained the maximum individual prison terms for each of the six charges to which Mr. Willard pleaded guilty.  In addition, as Mr. Willard acknowledges, the trial court expressly informed him of a mandatory consecutive prison term as a result of his guilty plea to count 4, where he was charged with failure to comply with order or signal of police officer, a felony of the third degree, in violation of R.C. 2921.331(B), (C)(1), and (C)(5)(a)(ii).

{¶73} Accordingly, since the trial court's discussion of Mr. Willard's prison terms was consistent with the applicable precedent, we conclude that the trial court complied with Crim.R. 11(C)(2)(a).

### *Restitution*

{¶74} Mr. Willard next contends that the trial court did not comply with Crim.R. 11(C)(2)(a) by failing to inform him that he may be ordered to pay restitution as part of his possible sentence. We agree.

{¶75} There appears to be no case law discussing whether restitution constitutes part of the "maximum penalty involved" under Crim.R. 11(C)(2)(a).

{¶76} In *State v. Wilson*, 8th Dist. Cuyahoga No. 102645, 2015-Ohio-5143, the Eighth District Court of Appeals appeared to presume that it does but determined that the defendant did not demonstrate prejudicial error. *See id*. at ¶ 11.

{¶77} In *State v. Jones*, 11th Dist. Lake No. 2012-L-072, 2013-Ohio-2616, this court suggested that restitution constitutes part of the maximum penalty involved by stating, in dicta, that "the best approach for all concerned is that, if a matter of restitution is not apparent from the nature of the plea and charges, there should be some understanding of the restitution parameters *at the time of the plea.* Otherwise, whether a plea was truly knowing or voluntary would be subject to question." (Emphasis sic.) *Id.* at ¶ 17.

{¶78} The existing statutory authority supports a conclusion that restitution is part of the "maximum penalty involved" under Crim.R. 11(C)(2)(a).

{¶79} R.C. 2929.18(A)(1) provides that "the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination

14

of *financial sanctions* authorized under this section * * *," including, "*[r]estitution* by the offender to the victim of the offender's crime * * *, in an amount based on the victim's economic loss." (Emphasis added.)

{¶80} The Supreme Court of Ohio has recognized that a restitution order imposed for a felony is part of an offender's sentence. *State v. Danison*, 105 Ohio St.3d 127, 2005-Ohio-781, 823 N.E.2d 444, syllabus. "'Sentence' means the *sanction* or combination of *sanctions* imposed by the sentencing court on an offender who is convicted of or pleads guilty to an offense." (Emphasis added.) R.C. 2929.01(EE). "'Sanction' means any *penalty* imposed upon an offender who is convicted of or pleads guilty to an offense, as punishment for the offense," and it expressly includes "any *sanction* imposed pursuant to any provision of sections 2929.14 to *2929.18* * * * of the Revised Code." (Emphasis added.) R.C. 2929.01(DD).

{¶81} Thus, since an order of restitution is a "penalty" and a component of the defendant's sentence, we conclude that it constitutes part of the "maximum penalty involved" under Crim.R. 11(C)(2)(a).

{¶82} The transcript demonstrates that the trial court did not make any reference to restitution during the plea hearing. The state contends that the trial court "substantially complied" with the rule because Mr. Willard's written plea agreement indicated that restitution may be imposed and because the trial court confirmed Mr. Willard's understanding of the written plea agreement during the plea colloquy.

{¶83} We note that in *State v. Veney,* 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, the Supreme Court of Ohio held that a written plea form could be considered as part of the totality of the circumstances in determining whether a trial court substantially

15

complied with the nonconstitutional requirements in Crim.R. 11(C)(a) and (b). *See id.* at ¶ 15-16.

{¶84} *Veney* may not be consistent with *Dangler*, where the court indicated that the relevant focus is on the "*dialogue* between the court and the defendant" and whether it "demonstrates that the defendant understood the consequences of his plea." (Emphasis added.) *See id.* at ¶ 12. The *Dangler* court also criticized its past use of "different tiers of compliance with the rule," including the concept of substantial compliance. *See id.* at ¶ 17. Under *Dangler*, the extent of trial court's compliance is now relevant in determining whether a prejudice analysis is required. *See id.* at ¶ 15 ("[A] trial court's *complete* failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice"). (Emphasis sic.)

{¶85} Further, while Mr. Willard's plea agreement stated that "restitution * * * may be imposed," it contained no specificity to the present case. In fact, the transcript demonstrates that the state was not aware of the Liberty Township Police Department's request for restitution until after the plea/sentencing hearing began. Defense counsel was not informed of the police department's request until the sentencing portion of the hearing, which occurred after the trial court accepted Mr. Willard's guilty pleas. Therefore, Mr. Willard could not have understood that he could be ordered to pay restitution to the Liberty Township Police Department prior to the trial court's acceptance of his guilty pleas.

{¶86} Accordingly, we conclude that the trial court did not comply with Crim.R. 11(C)(2)(a) by failing to inform Mr. Willard that he may be ordered to pay restitution the Liberty Township Police Department.

16

### Prejudice Exceptions

{¶87}  We next determine whether the trial court's error is "of a type that excuses a defendant from the burden of demonstrating prejudice." *Dangler* at ¶ 17.  We conclude that it is not.

{¶88}  According to the *Dangler* court, "[w]hen a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial-court proceedings and that he was prejudiced by that error." *Id.* at ¶ 13.  This traditional rule is subject to two "limited" exceptions.  *See id.* at ¶ 14-15.

{¶89}  First, "[w]hen a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, [a reviewing court] presume[s] that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Id.* at ¶ 14.

{¶90}  Second, "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice."  (Emphasis sic.)  *Dangler* at ¶ 15.  The court explained that in *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, it held that "the trial court completely failed to comply with Crim.R. 11(C)(2)(a)'s requirement that it explain the maximum penalty when the court made no mention of postrelease control in the plea colloquy, despite the fact the defendant was subject to a mandatory five years of postrelease control." *Id.*

{¶91}  The court reiterated that "[a]side from these two exceptions, the traditional rule continues to apply:  a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions

17

of Crim.R. 11(C)." *Id.* at ¶ 16. "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.*, quoting *Nero* at 108.

**{¶92}** In *Dangler*, the trial court informed the defendant that he would be required to register as a Tier III sex offender for the rest of his life but did not fully explain the obligations and restrictions that accompanied his status as a sex offender. *Id.* at ¶ 1. The Supreme Court of Ohio determined that neither of its exceptions to the prejudice requirements applied. *Id.* at ¶ 23.

**{¶93}** First, the "maximum-penalty advisement is not a constitutional requirement." *Id.* Second, the trial court did not "completely fail" to comply with the "maximum-penalty-advisement requirement" in Crim.R. 11(C)(2)(a) because it advised the defendant that he would be subject to the registration requirements of the statutory scheme. *See id.* at ¶ 22. Thus, the court concluded that the defendant could prevail "only by establishing that he would not have pleaded no contest but for the trial court's failure to explain the sex-offender classification scheme more thoroughly." *Id.* at ¶ 23.

**{¶94}** Here, Mr. Willard challenges the trial court's compliance with Crim.R. 11(C)(2)(a), which involves nonconstitutional rights. *See Dangler* at ¶ 23. Therefore, the first exception does not apply.

**{¶95}** We acknowledge that the trial court made no mention of restitution during the plea colloquy. However, in the context of a non-prison sanction, we construe the second exception as applicable when the trial court makes no mention of a *mandatory* component of a defendant's sentence. *See Sarkozy* at ¶ 22 (mandatory postrelease control); *State v. Rogers*, 2020-Ohio-4102, 157 N.E.3d 142, ¶ 23 (12th Dist.) (mandatory

Case No. 2020-T-0040

fine); *State v. Brown*, 2020-Ohio-4474, 158 N.E.3d 972, ¶ 32 (8th Dist.) (mandatory sex offender requirements).

{¶96} As the dissenting judge in *Rogers* aptly noted, construing *Dangler* broadly would result in a defendant being excepted from the prejudice requirement upon a trial court's failure to mention any component of the defendant's potential sentence, even if that component was not actually imposed, was inconsequential, or was demonstratively known. *See Rogers* at ¶ 36, fn. 4 (Piper, J., dissenting). It would also require reversal of pleas that would not have been reversed prior to *Dangler*, which would be contrary to the simplicity that the *Dangler* court intended. *See id.* at ¶ 36 (Piper, J., dissenting).

{¶97} R.C. 2929.18(A)(1) provides that the trial court *may* impose restitution, which indicates a restitution order is discretionary, not mandatory. Therefore, we conclude the trial court's error is not "of a type that excuses" Mr. Willard "from the burden of demonstrating prejudice." *Dangler* at ¶ 17.

### *Prejudice Analysis*

{¶98} "The test for prejudice is 'whether the plea would have otherwise been made.'" *Dangler* at ¶ 16, quoting *Nero* at 108. Prejudice must be established "'on the face of the record.'" *Id.* at ¶ 24, quoting *Hayward v. Summa Health Sys./Akron City Hosp.*, 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶ 26.

{¶99} Mr. Willard has not asserted the existence of prejudice, and we find none on the face of the record.

{¶100} Courts have held where a trial court fails to advise a defendant of some facet of a maximum penalty but otherwise complies with Crim.R. 11(C)(2)(a), the defendant cannot show prejudice if the trial court does not actually impose the component

19

of the maximum sentence that it did not discuss. *See State v. Liles*, 3d Dist. Allen No. 1-18-69, 2019-Ohio-3029, ¶ 23; *State v. Simmons*, 8th Dist. Cuyahoga Nos. 99513 and 100552, 2013-Ohio-5026, ¶ 7. For example, in *Simmons*, the Eighth District found no resulting prejudice from the trial court's failure to advise the defendant of possible fines and court costs where it did not actually impose them and otherwise advised the defendant of the maximum penalty he faced. *Id.* at ¶ 7.[2]

{¶101} The trial court properly advised Mr. Willard regarding the maximum penalty involved other than restitution, and it did not actually impose restitution for vehicle damage. Therefore, Mr. Willard cannot demonstrate prejudice resulting from the trial court's failure to inform him about potential restitution for vehicle damage.

{¶102} In addition, there is nothing in the record indicating that Mr. Willard would not have entered his guilty pleas had the trial court informed him of potential restitution for officer overtime.

{¶103} For instance, after defense counsel reviewed the police department's restitution request during the sentencing hearing, he disputed the portion relating to vehicle damage. Neither defense counsel nor Mr. Willard disputed the portion relating to officer overtime. Mr. Willard also did not move to withdraw his guilty pleas either before or after sentencing. Based Mr. Willard's comments following the trial court's announcement of sentence, the record indicates that Mr. Willard was primarily concerned with the length of his aggregate prison sentence, not the restitution order.

---

2. We acknowledge some appellate districts have determined that any issues relating to unimposed components of a penalty are "moot." *See, e.g., Roger*s at ¶ 10, fn. 1 (involving fines and driver's license suspension); *State v. Bostic*, 8th Dist. Cuyahoga No. 84842, 2005-Ohio-2184, ¶ 24 (involving postrelease control). However, we find a prejudice analysis to be more appropriate.

Case No. 2020-T-0040

{¶104} Accordingly, Mr. Willard has not established that he was prejudiced by the trial court's error.

{¶105} Mr. Willard's second assignment is without merit.

### *Restitution Order*

{¶106} In his first assignment of error, Mr. Willard challenges the trial court's restitution order in the amount of $4,500 for police officer overtime.

### *Standard of Review*

{¶107} This court reviews restitution orders pursuant to R.C. 2953.08(G)(2). *State v. Ciresi*, 2020-Ohio-5305, 162 N.E.3d 846, ¶ 5 (11th Dist.). That provision states:

{¶108} "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶109} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶110} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶111} "(b) That the sentence is otherwise contrary to law."

Case No. 2020-T-0040

{¶112} Here, none of the sections referenced in R.C. 2953.08(G)(2)(a) apply. Thus, our review is limited to determining whether we clearly and convincingly find that the restitution order is otherwise contrary to law. *Ciresi* at ¶ 10.

### *Supplemental Briefing*

{¶113} In his appellate brief, Mr. Willard's argument focuses on whether the amount of $4,500 for officer overtime bears a reasonable relationship to the loss the Liberty Township Police Department suffered.

{¶114} As indicated, this court, sua sponte, ordered the parties to file supplemental briefs addressing whether the Liberty Township Police Department constitutes a "victim" for purposes of R.C. 2929.18(A)(1). In their supplemental briefs, both Mr. Willard and the state agree that the Liberty Township Police Department does not constitute a "victim" under R.C. 2929.18(A)(1) and, therefore, that the trial court's restitution order was erroneous. Despite the state's concession of error, we briefly discuss the issue.

### *Law and Analysis*

{¶115} R.C. 2929.18(A)(1) provides, in relevant part, that "the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section," including "[r]estitution by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss."

{¶116} The statute does not define the term "victim." This court has defined a "victim of a crime" as "the person or entity that was the 'object' of the crime." *State v. Pietrangelo*, 11th Dist. Lake No. 2003-L-125, 2005-Ohio-1686, ¶ 15, quoting *State v. Samuels*, 4th Dist. Washington No. 03CA8, 2003-Ohio-6106, ¶ 5.

22

{¶117} In *Pietrangelo*, we determined that "a government entity voluntarily advancing its own funds to pursue a drug buy through an informant is not one of the scenarios contemplated by R.C. 2929.18(A)(1)." *Id.* We recognized that "[i]n certain circumstances, a government entity may be considered a victim of a crime under R.C. 2929.18(A)(1): For example, when government funds are embezzled or when government property is vandalized." *Id.* We also acknowledged the state's "legitimate interest and entitlement, in certain cases, to defray the spiraling costs of criminal investigation on behalf of the taxpayer." *Id.* at ¶ 17. However, we agreed with the majority of federal and states court that had concluded "'the government is not a victim entitled to restitution where public moneys are expended in pursuit of solving crimes, as these expenditures represent normal operating costs.'" *Id.*, quoting *State v. Sequiera*, 93 Haw. 34, 43, 995 P.2d 335 (2000). Based on the absence of "an express statement from the legislature authorizing trial courts to sentence criminal defendants to pay restitution to law enforcement agencies for this purpose," we declined to "take it upon ourselves to judicially rewrite the statute." *Id.*

{¶118} In *In re M.A.*, 2016-Ohio-1161, 61 N.E.3d 630 (11th Dist.), we determined police and fire departments did not qualify as "victims" pursuant to R.C. 2152.20(A)(3), which governs restitution following a delinquency adjudication, where the departments responded to a "nonspecific" bomb threat made to the schools within a district. *Id.* at ¶ 1. We explained that the bomb threat was not made against these departments and was not the type of crime "where actual harm was done to the Departments themselves, through damage or theft. They merely performed services in aiding the public and/or investigating crime, which is well within their ordinary duties." *Id.* at ¶ 21. While the record indicated

23

the police department had "expended some funds due to overtime work," the state cited no case law indicating that "overtime funds expended are not part of normal operating costs." *Id.* at ¶ 22. Further, even if additional overtime funds were considered an economic loss, the police department was not a "victim" as the statute has been interpreted. *Id.*; *see also State v. Jones*, 7th Dist. Jefferson Nos. 08 JE 20 and 08 JE 29, 2010-Ohio-2704, ¶ 47 ("[T]he government is not a victim under the restitution statute merely because it expended funds in some manner as a result of the defendant's offense").

{¶119} In this case, even assuming the Liberty Township Police Department incurred $4,500 in overtime costs as a result of Mr. Willard's offenses, we conclude, based on the foregoing authority, that such expenses were part of the department's normal operating costs. Therefore, the department was not a "victim" that suffered an "economic loss" pursuant to R.C. 2929.18(A)(1).

{¶120} Accordingly, we clearly and convincingly find that the trial court's restitution order is contrary to law. The trial court's judgment is modified to remove the restitution order and is affirmed as modified.

{¶121} Mr. Willard's first assignment of error has merit.

{¶122} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is affirmed in part, modified in part, and affirmed as modified.


THOMAS R. WRIGHT, J.,

MATT LYNCH, J.,

concur.

24

Case No. 2020-T-0040