[Cite as *State v. Shade*, 2022-Ohio-3845.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case Nos. 29373 & 29374 |
| | : | |
| v. | : | Trial Court Case Nos. 2021-CR-1731 |
| | : | 2020-CR-1045 |
| MICHAEL A. SHADE | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of October, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

J. DAVID TURNER, Atty. Reg. No. 0017456, 101 Southmoor Circle NW, Kettering, Ohio, Ohio 45429
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Michael A. Shade appeals from his conviction after he was found guilty of theft, failure to comply with the order or signal of a police officer, and having weapons while under disability; he was sentenced to a total of 84 months in prison. For the reasons that follow, the judgments of the trial court will be affirmed.

## I. Facts and Procedural History

{¶ 2} On August 14, 2020, Shade was indicted in Montgomery C.P. No. 2020-CR-1045 for theft, a felony of the fifth degree, and petty theft, a first-degree misdemeanor. On June 3, 2021, he was charged in a separate nine-count indictment in Montgomery C.P. No. 2021-CR-1731 for: Count 1 – failure to comply; Counts 2 & 3 – having weapons under disability; Counts 4 & 5 – improper handling of a firearm in a motor vehicle; Counts 6 & 7 – carrying a concealed weapon; Count 8 – aggravated possession of drugs; and Count 9 – obstructing official business. The parties reached a global plea agreement before trial. As to Case No. 2020-CR-1045, Shade agreed to plead guilty to theft in exchange for the dismissal of the petty theft; the parties also agreed to jointly recommend community control sanctions. As to Case No. 2021-CR-1731, the parties agreed that Shade would plead guilty to Counts 1 and 2, failure to comply and having weapons under disability (both felonies of the third degree), and in exchange, the State would dismiss the remaining charges. Additionally, both the State and Shade agreed to a recommended sentence of no more than 24 months in prison.

{¶ 3} Prior to the plea hearing, attorneys for both sides informed the court of the plea deal, and Shade's counsel asked that Shade be granted leave to visit his dying mother before disposition. The court agreed but explicitly warned Shade in open court

that "if you don't show up for your presentence investigation interview, you fail to come back to court when we tell you to come back to court * * * you will have entered pleas to these charges but the agreement about how you're going to be treated is off the table and you're at my mercy then. Do you understand that?" Tr. at 7-8. Shade confirmed his understanding.

{¶ 4} The Crim.R. 11 plea colloquy followed. The court explained to Shade about the constitutional and non-constitutional rights he would be giving up upon pleading guilty. Shade was also informed about the maximum sentence he was facing for each charge, that he faced a mandatory license suspension, and post-release control. The court further noted that he was eligible for community control on all of the counts to which he was pleading guilty, and that he would be facing a prison sentence of 84 months if he violated the terms of community control. "The felonies would be [served] consecutively to one another. * * * So, you would have 12 – 36 and 36 is 72 and 12 is 84 [months], * * * so a bunch of time that would be hanging over your head[.]" Tr. at 14.

{¶ 5} The court did not, however, inform Shade that if prison time were imposed for the charge of failure to comply, the sentence, by operation of law, would have to be served consecutively to any other prison term imposed. After completing the colloquy, the court determined that Shade was entering into his guilty pleas in a knowing, intelligent, and voluntary fashion and then set the schedule for a presentence interview and sentencing hearing (originally scheduled for August 4, 2021 but continued until September 8, 2021).

{¶ 6} Despite the warning at the plea hearing, Shade failed to appear at the

sentencing hearing, and a capias was issued for his arrest. He was eventually arrested in mid-January 2022 and the sentencing was held on January 26, 2022; Shade explained his previous absence by saying, "I just felt like I was in a place where I was just going to be, you know, sentenced anyway so I just kind of took my chances with it to be honest with you." Tr. at 28. The record also indicates that Shade attempted to present forged and phony documents to induce the court into imposing community control sanctions in lieu of prison.

{¶ 7} Ultimately, Shade was sentenced to prison terms of 12 months for theft in Case No. 2020-CR-1045 and 36 months for both failure to comply and having weapons while under disability in Case No. 2021-CR-1731. The court ordered the three sentences to be served consecutively to each other for a total of 84 months in prison. Shade has appealed, raising a single assignment of error.

## II.     Shade's plea was voluntary

{¶ 8} In his assignment of error, Shade argues that because the trial court did not inform him that a prison sentence for failure to comply is statutorily required to be served consecutively to other prison terms, he did not enter his guilty pleas in a knowing, intelligent, and voluntary manner.

{¶ 9} To satisfy the requirements of due process, a guilty plea must be made knowingly, intelligently, and voluntarily, and the record must affirmatively demonstrate as much. *State v. Harris*, 2d Dist. Clark No. 2020-CA-29, 2021-Ohio-1431, ¶ 15. For a plea to be made knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C). *State v. Brown*, 2d Dist. Montgomery Nos. 24520, 24705, 2012-Ohio-199, ¶ 13.

"[T]he rule 'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.' " *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168, 331 N.E.2d 411 (1975).

{¶ 10} Crim.R. 11(C)(2)(c) mandates that the trial court inform the defendant of the constitutional rights he is waiving, including the right to a jury trial, the right to confront witnesses, the right to compulsory process, the right against self-incrimination, and the right to require the State to establish guilt beyond a reasonable doubt. *State v. Perdue*, 2022-Ohio-722, 185 N.E.3d 683, ¶ 11 (2d Dist.). Strict compliance with the rule is required and a failure to do so invalidates the plea. *Id.*

{¶ 11} "A trial court must substantially comply with the notification of non-constitutional rights contained in Crim.R. 11(C)(2)(a) and (b), and a defendant must show prejudice before a plea will be vacated for failure to substantially comply with these notifications." *State v. Easter*, 2016-Ohio-7798, 74 N.E.3d 760, ¶ 8 (2d Dist.). "Substantial compliance" means that under the totality of the circumstances the defendant understands the implications of his plea and the rights he is giving up. *State v. Thomas*, 2d Dist. Montgomery No. 26907, 2017-Ohio-5501, ¶ 37; *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). A defendant who challenges a guilty plea on non-constitutional grounds must show a "prejudicial effect" – in other words, "that the plea would otherwise not have been entered." *Id.* at ¶ 38.

{¶ 12} Shade does not contend that his constitutional rights were violated (and

indeed, the transcript confirms that they were not), but instead, that there was not substantial compliance with Crim.R. 11, because the court failed to inform him that a conviction and sentence of failure to comply statutorily required consecutive sentences.

{¶ 13} Initially, it should be noted that we have previously rejected the proposition that a guilty plea to failure to comply (R.C. 2921.331(D)) is involuntary if the defendant is not told that the statute requires a consecutive sentence. *State v. Bailey*, 2d Dist. Montgomery No. 19736, 2004-Ohio-273, ¶ 16. Our reasoning was simple: Crim.R. 11(C) does not require that a defendant be told that his sentences may be imposed consecutively. *Id.; State v. Johnson*, 40 Ohio St.3d 130, 532 N.E.2d 1295 (1988), syllabus; *State v. Nawman*, 2d Dist. Clark No. 2014-CA-6, 2015-Ohio-447, ¶ 31.

{¶ 14} Shade's argument – that a court must inform a defendant that a sentence imposed pursuant to a R.C. 2921.331(D) must run consecutively to any other prison term is not a novel one and has been adopted by other Ohio appellate districts. He cites to *State v. Norman*, 8th Dist. Cuyahoga No. 91302, 2009-Ohio-4044. The *Norman* court stated that when a statute mandates that sentences be served consecutively, the consecutive nature "directly affects the length of the sentence, thus becoming a crucial component of what constitutes a 'maximum' sentence." *Id.* at ¶ 7. Put differently, when consecutive sentences are mandatory (as opposed to discretionary), a trial court must advise of that fact to achieve "substantial compliance" with Crim.R. 11(C). *See also State v. Milhoan*, 6th Dist. Lucas Nos. L-10-1328, L-10-1329, 2011-Ohio-4741.

{¶ 15} The holdings of cases like *Norman* and *Milhoan*, though, only apply "when the imposition of consecutive sentences is a foregone conclusion at the time the plea is

entered and accepted, that is, only in cases where 'a mandatory, consecutive prison term was a guaranteed consequence of appellant's guilty plea.' " *Milhoan* at ¶ 35, quoting *Norman* at ¶ 9. There is nothing that requires the court to advise as to "the potential for consecutive mandatory sentencing." *Id.*

{¶ 16} Shade's receiving a prison sentence, let alone a consecutive one, was not a "foregone conclusion" when he entered into his plea agreement. Shade was informed that he was eligible for community control sanctions on both failure to comply and having weapons while under disability at the plea hearing, and his plea agreement included simply a "cap" of 24 months if prison were imposed. Further, failure to comply does not carry mandatory prison time (*see* R.C. 2921.331(D) – "* * * *if* the offender is sentenced to a prison term for that violation, the offender shall serve the prison term consecutively to any other prison term* * *."), so despite the *possibility* of incurring a consecutive sentence, it was not a "guaranteed consequence" of Shade's guilty plea. We decline to adopt Shade's argument or that of his cited case.

{¶ 17} Perhaps the biggest strike against Shade in this case is that he brought all of this upon himself. The trial court tried to be merciful by letting Shade visit with his dying mother before being sentenced and only asked that he show up for the disposition. Instead, despite a clear warning of the consequences – "you fail to come back to court when we tell you to come back to court * * * you will have entered pleas to these charges but the agreement about how you're going to be treated is off the table and you're at my mercy then. Do you understand that?" (Tr. at 7-8) – he chose to run, forfeiting the deal brokered by his attorney. It is not reasonable to ask the trial court to inform a defendant

of potential sentences that are the consequence of hypotheticals or bad faith on the part of that defendant. Adopting Shade's argument would force trial courts to pre-draft sentences before even accepting the plea.

{¶ 18} Ultimately, we conclude that the trial court strictly complied with Crim.R. 11(C)(2)(c) as it pertained to Shade's federal constitutional rights and, at the very least, substantially complied with Crim.R. 11(C)(2)(a)-(b) as to his non-constitutional rights. The record demonstrates that Shade understood the nature of the charges against him, the maximum penalties involved, and his eligibility for community control sanctions. The court also informed Shade of the effects of his plea and that it could move to judgment and sentence (although in this case it did not immediately do so). Further, Shade stated that he was voluntarily pleading guilty. Tr. at 14. Finally, Shade has not demonstrated prejudice. There is no argument in his brief that the outcome of the plea would have been different or that he would not have pled guilty had the court explicitly stated that a prison term for a violation R.C. 2921.331(D) would run consecutively to other prison sentences. The assignment of error is overruled.

### III.     Conclusion

{¶ 19} The judgments of the trial court will be affirmed.

. . . . . . . . . . . . .


TUCKER, P.J. and LEWIS, J., concur.

Copies sent to:

Mathias H. Heck, Jr.

Elizabeth A. Ellis
J. David Turner
Hon. Steven K. Dankof