**[Cite as *State v. Anderson*, 2024-Ohio-2191.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-49 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-0913 |
| | : | |
| CARDEN ANDERSON | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 7, 2024

. . . . . . . . . . .

JENNIFER E. MARIETTA, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Carden Anderson appeals from his conviction following a guilty plea to three counts of felonious assault.

{¶ 2} Anderson contends the trial court violated Crim.R. 11 during his plea hearing by failing to advise him properly regarding his potential maximum sentence and his eligibility for community-control sanctions. He also claims the trial court incorrectly

calculated jail-time credit and failed to consider statutory sentencing factors regarding his youth.

{¶ 3} We conclude that the trial court properly advised Anderson in accordance with Crim.R. 11. We also reject his argument regarding the trial court's failure to consider statutory factors regarding his youth. We agree, however, that the trial court incorrectly computed his jail-time credit. Accordingly, the trial court's judgment will be affirmed in part and reversed in part, and the case will be remanded for recalculation of jail-time credit.

## I. Background

{¶ 4} Less than three months before his eighteenth birthday, Anderson participated in a drive-by shooting that injured three people inside of a residence. Following the filing of a delinquency complaint in juvenile court, Anderson was bound over to the common pleas court and charged with three counts of felonious assault, improperly discharging a firearm at or into a habitation, discharging a firearm at or near a prohibited premises, improper handling of a firearm in a motor vehicle, and having a weapon while under disability. The charges included several firearm specifications and specifications for discharging a firearm from a vehicle.

{¶ 5} Anderson subsequently entered into a written plea agreement with the State. The agreement provided for him to plead guilty to three counts of felonious assault and to testify against co-defendants in exchange for dismissal of all other charges and specifications. The trial court held a plea hearing on March 17, 2023. During the hearing, the trial court engaged in a Crim.R. 11 colloquy with Anderson. As relevant here, it advised him of the maximum penalty for felonious assault and explained the Reagan

Tokes Law. The trial court did not specifically mention consecutive sentencing or community-control eligibility. At the conclusion of the hearing, the trial court accepted the plea and made findings of guilt. The trial court later imposed three consecutive sentences resulting in an aggregate prison term of 22 to 26 years. Anderson appeals, advancing three assignments of error.

## II. Analysis

{¶ 6} The first assignment of error states:

**The Court failed to comply with Crim.R. 11 when it failed to advise Defendant appropriately of the potential maximum sentence and when it did not advise him of his eligibility for community control sanctions.**

{¶ 7} Anderson's first assignment of error invokes Crim.R. 11(C)(2)(a), which obligated the trial court at the plea hearing to be sure he understood "the maximum penalty involved" and "if applicable," that he was "not eligible" for community-control sanctions. He contends the rule's reference to "the maximum penalty" obligated the trial court to advise him it could impose consecutive sentences. He also claims the rule obligated the trial court to advise him that he was eligible for community-control sanctions. Given the trial court's failure to address these issues, Anderson asserts that he is not required to show prejudice and that his plea must be vacated.

{¶ 8} Upon review, we find Anderson's argument to be unpersuasive. Although Crim.R. 11(C)(2)(a) obligates a trial court to inform a defendant of "the maximum penalty involved," this court consistently has held that it does not apply to potential consecutive sentencing. *State v. Shade*, 2d Dist. Montgomery Nos. 29373 & 29374, 2022-Ohio-3845,

¶ 13 (citing cases); *see also State v. Willard*, 2021-Ohio-2552, 175 N.E.3d 989, ¶ 63-70 (11th Dist.). In *Shade*, we did recognize that Crim.R. 11(C)(2)(a) might require a defendant to be advised of consecutive sentences if they were a mandatory, guaranteed consequence of his plea. *Shade* at ¶ 14-16. But neither *Shade* nor the present case involved mandatory consecutive sentences.

{¶ 9} Anderson relies on *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, to support his argument about Crim.R. 11(C)(2)(a). *Bishop* involved a defendant who committed a new offense while on post-release control. The Ohio Supreme Court held that Crim.R. 11(C)(2)(a) obligated the trial court to inform the defendant that upon conviction for the new felony it could terminate post-release control and impose a mandatory consecutive sentence for the violation. *Id.* at ¶ 17, 21. Notably, however, in *Shade*, a post-*Bishop* case that did not involve a consecutive sentence for a post-release-control violation, we adhered to the general rule that a trial court need not advise a defendant of potential consecutive sentences.

{¶ 10} We did the same in a very recent case involving one of Anderson's co-defendants. In *State v. Koob*, 2d Dist. Clark No. 2023-CA-42, 2024-Ohio-1073, one of Anderson's co-defendants pled guilty to the same three charges as Anderson and received the same consecutive sentences from the same judge. On appeal, the co-defendant argued that his plea was invalid because the judge had not informed him of the potential for consecutive sentences on each count of felonious assault. We rejected this argument, holding that Crim.R. 11(C) required no such advisement. *Id.* at ¶ 13; *see also State v. Swaney*, 2d Dist. Montgomery Nos. 28357 & 28515, 2020-Ohio-210, ¶ 28

(noting that trial courts normally are not required to advise a defendant that consecutive sentences may be imposed). On the authority of *Koob* and the other cases from this district, we conclude that the trial court did not violate Crim.R. 11(C)(2)(a) by failing to mention the possibility of consecutive sentences during Anderson's plea hearing.

{¶ 11} Anderson next contends the trial court violated Crim.R. 11(C)(2)(a) by failing to advise him that he was eligible for community-control sanctions. But "Crim.R. 11(C) does not require the trial court to inform a defendant when he or she is eligible for community control; it only requires that a defendant be informed of his or her ineligibility." *State v. Russell*, 2d Dist. Clark No. 2010-CA-54, 2011-Ohio-1738, ¶ 9; *see also State v. Drzayich*, 2016-Ohio-1398, 62 N.E.3d 850, ¶ 22 (6th Dist.) ("[T]he rule makes clear that the trial court must orally advise a defendant of his or her *ineligibility* for community control. There is no converse requirement that the trial court advise the defendant that he or she is *eligible* for community control."); *State v. Anderson*, 7th Dist. Mahoning No. 11 MA 125, 2012-Ohio-2759, ¶ 17 ("Crim.R. 11(C) only requires an advisement if the offender is not eligible for probation or a community control sanction."). Accordingly, the first assignment of error is overruled.

{¶ 12} Anderson's second assignment of error states:

**Defendant was not properly afforded jail time credit in accordance with R.C. 2929.19(B)(2)(g)(i).**

{¶ 13} Anderson notes that the trial court's judgment entry of conviction awarded him 464 days of jail-time credit from May 25, 2022, to September 1, 2023, with additional jail-time credit from September 1, 2023, until his conveyance to prison. Anderson argues

that there were 465 days from May 25, 2022 to September 1, 2023. He also asserts that his incarceration began on May 20, 2022, not May 25, 2022. For its part, the State concedes error, acknowledging that Anderson was arrested on May 20, 2022, and it urges us to remand the case for recalculation of jail-time credit.

{¶ 14} Upon review, we note that there were 464 days "from May 25, 2022 to September 1, 2023," which is what the trial court's judgment entry correctly stated. With regard to Anderson's arrest date, however, the record reflects that he was arrested on May 20, 2022, not May 25, 2022. As a result, we sustain Anderson's assignment of error seeking recalculation of jail-time credit.

{¶ 15} Anderson's third assignment of error states:

**The Trial Court did not consider the required factors involving Defendant's youth under R.C. 2929.19(B)(1)(b), nor indicate it had considered the factors contained in R.C. 2929.11 and R.C. 2929.12.**

{¶ 16} Anderson first claims the trial court gave no indication that it had considered the statutory purposes of felony sentencing in R.C. 2929.11 or the "seriousness" and "recidivism" factors in R.C. 2929.12. Therefore, he contends his sentence was contrary to law.

{¶ 17} Although the trial court did not mention the foregoing factors during Anderson's sentencing hearing, its judgment entry of conviction referenced its consideration of them. The trial court had no obligation to do more. *State v. Segovia*, 2d Dist. Clark No. 2023-CA-35, 2024-Ohio-1392, ¶ 49; *State v. Thompson*, 2d Dist. Clark No. 2022-CA-3, 2022-Ohio-2316, ¶ 15. Indeed, even " '[o]n a silent record, a trial court is

presumed to have considered the statutory purposes and principles of sentencing, and the statutory seriousness and recidivism factors.' " *State v. Bryant*, 2d Dist. Miami No. 2023-CA-17, 2024-Ohio-1192, ¶ 33, quoting *State v. Goldblum*, 2d Dist. Montgomery No. 25851, 2014-Ohio-5068, ¶ 50. The trial court's failure explicitly to address the factors or make findings on them did not render Anderson's sentence contrary to law.

{¶ 18} In a final argument, Anderson contends the trial court failed to consider statutory factors in R.C. 2929.19(B)(1)(b) concerning his youth. Anderson argues that his sentence is contrary to law because the record "affirmatively shows" that the trial court did not consider these factors. In support, he cites the trial court's failure to mention the statutory youth factors during the sentencing hearing or in its judgment entry of conviction. Although defense counsel made arguments about his youth and its relevance to sentencing, Anderson claims the record is devoid of evidence that the trial court considered counsel's remarks.

{¶ 19} In 2021, the General Assembly enacted R.C. 2929.19(B)(1)(b), which obligates a trial court to consider certain factors when an offender was under age 18 at the time of his offense. Specifically, the statute obligates a trial court at sentencing to "consider youth and its characteristics as mitigating factors, including" the following:

> (i) The chronological age of the offender at the time of the offense and that age's hallmark features, including intellectual capacity, immaturity, impetuosity, and a failure to appreciate risks and consequences;
>
> (ii) The family and home environment of the offender at the time of the offense, the offender's inability to control the offender's surroundings, a

history of trauma regarding the offender, and the offender's school and special education history;

(iii) The circumstances of the offense, including the extent of the offender's participation in the conduct and the way familial and peer pressures may have impacted the offender's conduct;

(iv) Whether the offender might have been charged and convicted of a lesser offense if not for the incompetencies associated with youth, such as the offender's inability to deal with police officers and prosecutors during the offender's interrogation or possible plea agreement or the offender's inability to assist the offender's own attorney;

(v) Examples of the offender's rehabilitation, including any subsequent growth or increase in maturity during confinement.

R.C. 2929.19(B)(1)(b)(i)-(v).

{¶ 20} This court twice recently has addressed appellate review of a trial court's obligation to consider the statutory youth factors quoted above. *See Bryant* at ¶ 36-40; *State v. Wallace*, 2d Dist. Clark No. 2023-CA-53, 2024-Ohio-1393, ¶ 11-12. As in the present case, the trial court in *Bryant* did not mention R.C. 2929.19(B)(1)(b) during the sentencing hearing or in its judgment entry. *Bryant* at ¶ 35. Adopting the analysis applied by other Ohio appellate districts, we concluded "that our review is limited to whether the record affirmatively demonstrates that the court failed to consider the R.C. 2929.19(B)(1)(b) factors." *Id.* at ¶ 37. Although the trial court had not mentioned any of the statutory youth factors, we found evidence in the record pertaining to several of them

(including a presentence-investigation report and a forensic-evaluation report) that the trial court had considered. *Id.* at ¶ 38-39. "Based on the statements made at the sentencing hearing and other evidence in the record," we did not find that the record affirmatively demonstrated the trial court's failure to consider the R.C. 2929.19(B)(1)(b) factors. *Id.* at ¶ 40.

{¶ 21} The second case, *Wallace*, involved another of Anderson's co-defendants. The 17-year-old defendant in *Wallace* was bound over from juvenile court and tried as an adult just like Anderson. After entering a negotiated guilty plea to three counts of felonious assault, the defendant in *Wallace* received an aggregate sentence of 22 to 26 years in prison, which was the same sentence imposed on Anderson by the same judge. On appeal, the defendant referenced the R.C. 2929.19(B)(1)(b) factors and argued that the trial court had not adequately considered his youth.

{¶ 22} Relying on our earlier opinion in *Bryant*, we rejected the defendant's argument, reasoning:

Here, the only mention of Wallace's youth at the disposition (by any party) was a brief recitation of his juvenile record by the court. The rest of the record, though, contained indications of Wallace's youth. The court noted that it had considered the PSI, which contained information about Wallace's social, family, education, and health history. Among other things, the report recounted the death of his mother, drug use, the fact that he dropped out of high school after the ninth grade, and that he had two young children. The trial court also had two forensic evaluations which gave

detailed analyses of Wallace's mental health, intellectual capacity, and maturity, as well as the juvenile court's findings on amenability. Based on documents in possession of the trial court, it cannot be said that the record affirmatively demonstrates that the court failed to consider the R.C. 2929.19(B)(1)(b) factors.

*Id*. at ¶ 12.

{¶ 23} In the present case, Anderson stresses the trial court's failure to mention the statutory youth factors at sentencing or in its judgment entry. For its part, the State concedes "error" insofar as the trial court did not specifically reference Anderson's youth as a sentencing factor, while arguing that his sentence nevertheless was appropriate. In *Bryant* and *Wallace*, however, the trial courts also did not mention R.C. 2929.19(B)(1)(b) or reference the statutory youth factors. Despite this omission, our analysis focused on whether the record contained evidence pertaining to them and whether the trial court had considered that evidence. In both cases, we found that the trial court had considered such evidence, which existed in the form of PSI reports and forensic evaluations. Therefore, the record did not affirmatively demonstrate the trial court's failure to consider the statutory youth factors.

{¶ 24} We reach the same conclusion in Anderson's case. At sentencing, defense counsel stressed Anderson's young age. Defense counsel also referenced Anderson's "difficult time as a child" and lack of guidance as a teenager. The trial court's judgment entry reflected its consideration of these statements by defense counsel. As in *Wallace*, the trial court at sentencing also made a brief reference to Anderson's juvenile record,

which included prior adjudications for attempted breaking and entering, theft, and burglary.

{¶ 25} The record before the trial court contained significant additional information pertaining to Anderson's youth. In its judgment entry, the trial court stated that it had considered a PSI report, which indicated that Anderson had resided with a foster family and, by his own admission, "had a messed up life." The PSI report stated that he had quit school in the ninth grade, that he had no income, and that he began drinking alcohol at age 15. The report also noted his continuing use of marijuana and "pills."

{¶ 26} In addition to the PSI report, the trial court indicated that it had reviewed the "record," which included two comprehensive forensic evaluations addressing Anderson's amenability to rehabilitation in the juvenile system. These written evaluations provided the trial court with a thorough analysis of his mental health, intellectual capacity, and maturity. Both lengthy reports examined virtually every aspect of Anderson's life, including the circumstances of the offense, his childhood history, educational history, mental-health history, mental status, legal history, relationship history, personality traits, and intellectual capacity.

{¶ 27} As we did in *Bryant* and *Wallace*, we conclude that the record does not affirmatively demonstrate the court's failure to consider the R.C. 2929.19(B)(1)(b) factors. Accordingly, Anderson's third assignment of error is overruled.

### III. Conclusion

{¶ 28} Having sustained the second assignment of error, we reverse the trial court's judgment with regard to jail-time credit and remand the case for recalculation of

that credit. In all other respects, the trial court's judgment is affirmed.

. . . . . . . . . . . . .


WELBAUM, J. and HUFFMAN, J., concur.